SCOPELITIS, GARVIN, LIGHT,
    HANSON & FEARY, P.C.
James H. Hanson, *Pro Hac Vice,* Ind. Bar No. 08100-49
jhanson@scopelitis.com
Robert L. Browning, *Pro Hac Vice,* Ind. Bar No. 15128-49
rbrowning@scopelitis.com
R. Jay Taylor Jr., *Pro Hac Vice,* Ind. Bar No. 19693-53
jtaylor@scopelitis.com
10 West Market Street, Suite 1500
Indianapolis, IN 46204
(317) 637-1777
Fax: (317) 687-2414

Christopher C. McNatt, Jr., Cal. Bar No. 174559
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, LLP
2 North Lake Avenue, Suite 460
Pasadena, CA 91101
(626) 795-4700
Fax: (626) 795-4790
cmcnatt@scopelitis.com

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE SOTO, Individually, on Behalf of All Others Similarly Situated, and on Behalf of the General Public,<br><br>    Plaintiff, and<br>    Counterclaim Defendant,<br> vs.<br>DIAKON LOGISTICS (DELAWARE) INC., a foreign corporation;<br>    Defendant, and<br>    Counterclaimant<br>and<br>DOES 1 through 50, inclusive,<br>    Defendants,<br><br>DIAKON LOGISTICS (DELAWARE) INC.,<br>    Third-Party Plaintiff,<br> vs.<br>SAYBE'S, LLC,<br>    Third-Party Defendant | **CASE NO. 08-CV-0033-L-AJB**<br><br>**<u>CLASS ACTION</u>**<br><br>**OPPOSITION OF DIAKON LOGISTICS (DELAWARE) INC. TO THE MOTION TO DISMISS COUNTERCLAIM AS TO JOSUE SOTO AND THIRD-PARTY COMPLAINT AS TO SAYBE'S, LLC** |

Defendant/Counterclaimant/Third-Party Defendant, Diakon Logistics (Delaware) Inc.

("Diakon), respectfully submits the following opposition to the motion of Plaintiff/Counterclaim

1    Defendant, Josue Soto ("Soto"), and Third-Party Defendant, Saybe's, LLC ("Saybe's"), to

2    dismiss the Counterclaim as to Soto and the Third-Party Complaint as to Saybe's (Dkt. No. 20).

3                                        I.

4                               **INTRODUCTION**

5           Soto and Saybe's collectively assert that Diakon's counterclaim for indemnity against

6    Soto (the "Counterclaim") and its third-party complaint for indemnity against Saybe's (the

7    "Third-Party Complaint") must be dismissed because indemnity is only available under their

8    respective Service Agreements ("SAs") for claims against Diakon by third-parties relating to

9    conduct of Soto and not for amounts relating to claims by them against Diakon regarding the

10   purportedly wrongful acts of Diakon itself.  Soto and Saybe's are wrong.

11          Their error begins with their improper conflation of themselves and the indemnity claims

12   against them.  Soto and Saybe's are distinct parties facing separate indemnity claims.  Soto is an

13   individual who contracted with Diakon from May 4 through November 2, 2005.  Saybe's is a

14   limited liability company that contracted with Diakon from November 2, 2005 until July 2007.

15   In the underlying lawsuit here, Soto claims Diakon misclassified him as an independent

16   contractor when he was really an employee and seeks relief under different provisions of the

17   California Labor Code.  Saybe's is not a party to Soto's underlying action and has not asserted

18   any claims against Diakon.   While Diakon's Counterclaim against Soto and Third-Party

19   Complaint against Saybe's seek indemnity relating to the claims asserted by Soto in the

20   underlying action, they are independent claims asserted against distinct parties and must be

21   addressed separately.

22          First, the Counterclaim should not be dismissed because nothing in Soto's SA limits

23   Diakon's right to indemnity to situations only where Diakon is sued by a third party relating to

24   Soto's conduct.  Rather, indemnity under Soto's SA extends to "any or all" amounts "incurred by

25   or asserted against" Diakon "arising out of, or resulting from … [Soto's] performance of the

26   services arising out of or relating to this Agreement."  *See Service Agreement,* dated May 4,

27   2005, §6 (Ex. A to Diakon's Answer, Affirmative Defenses, and Counterclaim, dkt. no. 3)

28   ("Soto's SA").  Soto's claims against Diakon arise out of Soto's performance of services relating

to the agreement.  And Virginia law, which governs interpretation of the SAs, permits parties to a contract to agree that one of them will bear costs and losses for which the other is at fault; and if Diakon prevails, Diakon will be entitled to indemnity for its attorneys' fees and costs.

Second, Diakon's Third-Party Complaint against Saybe's seeks indemnity for claims against Diakon by a third-party.  Soto, the only party that has sued Diakon, is a third-party with respect to the SA between Saybe's and Diakon.  Soto's claims are precisely the kinds of claims that Soto and Saybe's agree are subject to indemnity under the applicable provisions.  And the indemnity provisions in Saybe's SAs are sufficient to cover indemnity for amounts purportedly resulting from conduct of Diakon.  These provisions must be enforced.

## II.

## BACKGROUND

### A.

### Diakon's California Operations

Diakon is a federally regulated interstate motor carrier that provides logistics and home delivery services to various large retailers in California, including Sears, Jerome's Furniture, and Ethan Allen.  To facilitate the home delivery component of its services, Diakon utilizes the services of individual and corporate transportation service providers (referred to herein as "Contractors") that enter into SAs with Diakon.

### B.

### Soto's Claims In The Underlying Action

Soto executed his SA with Diakon on May 4, 2005 and provided transportation services to Diakon until November 2005.  Soto filed his Complaint in the San Diego Superior Court on December 5, 2007, claiming he was Diakon's employee and was improperly classified as an independent contractor and asserting claims for (1) unpaid minimum wages, (2) missed meal and rest breaks, (3) reimbursement of the operational expenses he agreed to pay under his SA, (4) statutory penalties for improperly itemized wage statements, (5) restitution under the California Unfair Competition Law (the "UCL"), and (6) statutory penalties and fees under the California

1   Private Attorney General Act ("PAGA").  Diakon removed the case to this Court on January 4,

2   2008.

3          Saybe's entered into SAs with Diakon on November 2, 2005 and November 2, 2006.

4   Saybe's continued to provide transportation services to Diakon until approximately July 2007.

5   Saybe's has not filed a complaint against Diakon contending it was Diakon's employee or

6   seeking any of the relief sought by Soto.

7                                               **C.**

8                                **Diakon's Indemnity Claims**

9          Diakon has asserted a Counterclaim against Soto and a Third-Party Complaint against

10  Saybe's seeking indemnity in connection with Soto's claims.  The SAs of Soto and Saybe's

11  contain virtually identical indemnity provisions that state:

12          **SECTION 6. Indemnification.**   Without limiting any other rights that the
            Company [Diakon] may have hereunder or under applicable law, the Contractor
13          [Soto or Saybe's] agrees to indemnify [Diakon] harmless from any and all claims,
            losses, liabilities, costs and expenses of any kind whatsoever, including, without
14          limitation, attorneys' fees (all of the foregoing being collectively referred to as
            "Indemnified Amounts") incurred by or asserted against [Diakon]] and arising out
15          of, or resulting from, in whole or in part, the Contractor's performance including,
            including, without limitation, Indemnified Amounts arising out of, or resulting
16          from, in whole or in part, the Contractor's performance of the services arising out
            of or relating to this Agreement, including, without limitation, Indemnified
17          Amounts arising out of, or resulting from (i) injury or death to persons, including,
            without limitation, third parties, employees of the Contractor or persons driving,
18          riding in, operating, repairing, maintaining, loading or unloading the Contractor's
            vehicles, equipment or other property, (ii) damage to the property of any person
19          or legal entity, including, without limitation, loss or damage to items intended for
            transport which are in the Contractor's possession or under his dominion and
20          control, and (iii) violation of any law, ordinance or regulation of any Federal, state
            or local governmental authority by the Contractor or its employees,
21          subcontractors or agents.  The Contractor shall pay to the Company, on demand,
            any and all amounts necessary to indemnify the Company from and against all
22          such Indemnified Amounts incurred by or asserted against the Company, and the
            Company shall have the right to set-off any such Indemnified Amounts against
23          any amounts owed by the Company to the Contractor under this Agreement.

24  *See Soto's SA* § 6; *Service Agreements* dated Nov. 2, 2005, and November 2, 2006, §§ 14 (Exs.

25  A and B to Diakon's Third-Party Complaint, dkt. no. 9 ("Saybe's SAs").  In its Counterclaim and

26  its Third-Party Complaint, Diakon alleges that Soto and Saybe's must indemnify Diakon for any

27  damages assessed against Diakon in Soto's underlying action.  Diakon also seeks indemnity for

28  the attorneys fees it incurs in this matter regardless of the outcome.

# III.

## ARGUMENT

### A.

### Motion To Dismiss – Standards and Standing

Soto and Saybe's move to strike the Counterclaim against Soto and the Third-Party Complaint against Saybe's pursuant to Fed.R.Civ.P. 12(b)(6). They cite the "no set of facts" standard announced by the U.S. Supreme Court in *Conley v. Gibson,* 336 U.S. 41, 45-46 (1957). In *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007), the Supreme Court acknowledged that *Conley* standard was an incorrect formulation of the proper test to be applied under Rule 12(b)(6). As this Court has noted, the Supreme Court explained in *Bell Atlantic* that "a claim does not need detailed factual allegations to survive a motion to dismiss" so long as the factual allegations are "sufficient, when taken as true, to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtful in fact." *Multimedia Patent Trust v. Microsoft Corp.,* 525 F.Supp.2d 1200, 1212 (S.D. Cal. 2007) (citing *Bell Atlantic*, 127 S.Ct. at 1965). In other words, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show "'that the pleader is entitled to relief.'" *Palomares v. Bear Stearns Residential Mortg. Corp.*, 2008 WL 686683, *3 (S.D. Cal. Mar. 13, 2008) (quoting *Bell Atlantic*, 127 S.Ct. at 1965)).

Moreover, Rule 12 by its terms contemplates that motions to dismiss, like answers, will be brought by the party against whom the subject claims have been asserted. *See* Fed.R.Civ.P. 12(a)(1) and (4) ("[a] *defendant* must serve an answer," the timing of which is altered upon the filing of a Rule 12(b) motion) (emphasis added), and 12(b) ("[a] motion asserting any of these defenses must be made before pleading if a *responsive pleading* is allowed") (emphasis added). For this reason, Soto may not seek or obtain the dismissal of the Third-Party Complaint asserted against Saybe's, and Saybe's may not seek or obtain the dismissal of the counterclaim asserted against Soto. Diakon accordingly responds to the motions as if they had been asserted by the appropriate party, and not collectively.

1

2

**B.**

**Virginia Law Governs Interpretation Of The SAs**

3      Soto's and Saybe's SAs each provide that they will be "governed by and construed in

4    accordance with the laws of the Commonwealth of Virginia." *See Soto's SA,* § 14; *Saybe's SAs*,

5    §§ 14.   There is a "strong policy" in California "favoring enforcement" of choice of law

6    provisions like the ones in the SAs.  *See Narayan v. EGL, Inc.*, 2007 WL 2021809, *4 (N.D. Cal.

7    July 10, 2007) (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-465 (1992)).

8    These choice of law provisions will be enforced unless Virginia has "no substantial relationship

9    to the parties or the transaction" or application of Virginia law would be contrary to a

10   fundamental policy of California.  *See id.* at *6 (citing Restatement (Second) of Conflicts of Law

11   § 187(2)).  Virginia has a substantial relationship to the parties because Diakon is headquartered

12   there.  *See Nedlloyd Lines*, 3 Cal.4th at 467 (substantial relationship exists where one party is

13   domiciled or resides in the chosen state).  And fundamental policies of California and Virginia

14   are not implicated here, where the issue is simply the enforcement of the parties' contractual

15   promises.  *See id.* at 468 (difference in state law with respect to enforcement of implied covenant

16   of good faith and fair dealing does not implicate either state's fundamental interests, but rather

17   implicates general interest in having promises performed).

18

**C.**

19

**Diakon's Counterclaim Against Soto Should Not Be Dismissed**

20      In its Counterclaim against Soto, Diakon seeks indemnity for all amounts arising out of

21   Soto's action against Diakon.  Soto contends Diakon is only entitled to indemnity under Soto's

22   SA in situations where Diakon is sued by a third party over conduct of Soto.  Soto also asserts

23   that the law precludes indemnification of a party by another where the indemnity claim arises out

24   of an action by the other against the party seeking indemnity.  Soto is wrong.

25      First, nothing in the indemnity provision, or in any other part of Soto's SA, limits Soto's

26   indemnity obligation to situations in which Diakon is sued by a third-party for conduct of Soto.

27   Rather, Soto's SA specifically provides that Soto must "indemnify [Diakon]" for "any and all

28   claims, losses, liabilities, costs and expenses of any kind whatsoever … incurred by or asserted

against [Diakon] and arising out of, or resulting from, in whole or in part, [Soto's] … performance of the services arising out of or relating to this Agreement." *See Soto's SA* § 6. This provision covers actions against Diakon by Soto himself because Soto's claims "arise out of" and "result from" Soto's "performance of" his services under the SA.  In particular, Soto alleges that he was an employee and not an independent contractor when he was performing his services and that he was deprived of various labor and employment benefits available to him under California state law during the time he performed his services.  He seeks to recover those benefits.  His claims against Diakon therefore arise out of and relate to the services he performed for Diakon under his SA, and the claims are accordingly subject to the SA's indemnity provision.

Second, Soto's assertion that the maxim *ejusdem generis* applies is incorrect.  First, as Soto recognizes, the maxim is "used for legislative interpretation." *See Soto and Saybe's Mem.,* p. 6.  The two cases cites, *People v. Giordano,* 42 Cal.4th 644 (2007), and *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001), are both statutory interpretation cases.  Neither case, nor any other that Soto cites, applies the maxim to a contract for indemnity.  Moreover, because the doctrine of *ejusdem generis* cannot be applied to defeat legislative intent, *Eller Media Co. v. Comm. Redev. Agency,* 133 Cal.Rptr.2d 324, 333 (Cal. Ct. App. 2003), it should not be used here to defeat the clear intent of the parties as expressed in the plain text of the indemnity provision.  The indemnity provision in Soto's SA specifically states that Soto must indemnify Diakon for "*any and all* claims, losses, liabilities, costs and expenses *of any kind whatsoever*" so long as they arise out of or result from Soto's performance under the agreement.  In light of this explicitly and intentionally broad formulation, it would defeat the parties' clear intent to narrow Soto's indemnity obligation to the three enumerated categories, particularly where the SA expressly states that Soto's indemnity obligation only "included" such claims, "*without limitation*." *See Soto's SA*, § 6 (emphasis added).

Third, under the law of Virginia, parties to a contract may agree that one party will bear all costs and losses (except those relating to personal injuries) for which the other party is at fault. *See Chesapeake & Ohio Ry. Co. v. Clifton Forge-Waynesboro Telephone Co.,* 224 S.E.2d 317 (Va. 1976).  Although not explicitly an indemnity case, the *Chesapeake & Ohio* case is

1    instructive.  In that case, a telephone company and a railroad entered into a contract under which

2    the telephone company agreed to assume "all risks of loss or damage of any nature . . . however

3    caused" and to release the railroad "from all liability on account thereof."   The telephone

4    company sued the railroad for property damage and argued that this loss-shifting provision was

5    unenforceable because it would relieve the railroad of responsibility for its own fault.   The

6    Virginia Supreme Court rejected the telephone company's argument and held that the provision

7    was enforceable.  *Id.* at 865-66.  The validity of the Virginia Supreme Court's ruling in the

8    *Chesapeake & Ohio* case has been reaffirmed on various occasions.  *See, e.g., Estes Express*

9    *Lines, Inc. v. Chopper Express, Inc.,* 641 S.E.2d 476, 479-80, and n. 8 (Va. 2007) (noting that

10   while parties may not indemnify themselves for their own negligence where it causes personal

11   injuries, self-indemnification is acceptable under the *Chesapeake & Ohio* case where property

12   damage claims are involved).

13          Thus, the indemnity provision is enforceable under Virginia law, and requires that Soto

14   indemnify and hold Diakon harmless for all amounts resulting from or arising out of Soto's

15   performance under his SA.   This is so regardless of whether Diakon prevails on Soto's

16   underlying employment reclassification claims.   Soto's arguments presuppose that he will

17   prevail.  Diakon believes this is unlikely.  If Diakon wins, Diakon will be entitled to indemnity

18   from Soto under Soto's SA for all of the fees Diakon has and will continue to incur defending

19   this case.  Soto has not addressed this aspect of his indemnity obligation, and his arguments

20   regarding the purported impropriety of Diakon's self-indemnification are irrelevant to his

21   obligation in that regard.

22          Under the standard of review set out above, Diakon's Counterclaim cannot be dismissed

23   if its allegations plausibly show that it is entitled to relief.  *Bell Atlantic*, 127 S.Ct. at 1965.  At

24   the very least, Diakon's allegations meet this standard.   Its Counterclaim should not be

25   dismissed.

26

27

28

**D.**

**The Third-Party Complaint Against Saybe's Presents The Very Kind Of
Indemnity Claim Saybe's And Soto Say Are Acceptable**

Saybe's challenges the Third-Party Complaint with the same claims Soto uses against the counterclaim: Saybe's asserts that indemnity is only appropriate "where the Company (Diakon) is sued *by a third party* for an act or conduct of the Contractor." *See Soto's and Saybe's Mem.*, p. 5 (emphasis in original). But the Third-Party Complaint *does* seek indemnity from Saybe's with respect to claims asserted by a third-party – *Soto*. Soto is the only party that has sued Diakon here. Diakon seeks indemnity from Saybe's under Saybe's SAs. Soto is a third-party with respect to that agreement.

And, as with Soto's SA, Saybe's SAs do not limit indemnity to situations where Diakon is sued "for an act or conduct of" Saybe's. Rather, Saybe's must indemnify Diakon for "any and all claims, losses, liabilities, costs and expenses of any kind … arising out of, or resulting from … [Saybe's] performance of the services arising out of or relating to this Agreement." *See Saybe's SAs* §§ 6. The claims asserted by Soto in the underlying action arise out of and result from Saybe's performance under its SAs. Saybe's provided transportation services to Diakon under its SAs. Soto did much of the driving and delivery work for Saybe's. Soto, who worked for Saybe's and had no relationship at all with Diakon after he terminated his own SA, now claims he was Diakon's employee. Because Soto's claims involve his employment status at the time he furnished the labor that helped Saybe's perform the transportation services called for under Saybe's SA, Soto's claims against Diakon necessarily arise out of and result from the services Saybe's provided under its SA. Soto's claims are therefore covered by the indemnity provision in Saybe's SA.

Further, the indemnity provisions in Saybe's SAs are sufficiently specific to require Saybe's to indemnify Diakon in connection with losses purportedly arising out of Diakon's own conduct. The Virginia Supreme Court approved a far broader provision in the *Chesapeake & Ohio* case discussed above, which obligated the telephone company to "assume[] all risks of loss or damage of any nature to [the company's telephone lines], however caused." *See* 224 S.E.2d at

318-319.  Likewise, in *Richardson v. Econo-Travel Motor Hotel Corp.*, 553 F.Supp. 320 (E.D. Va. 1982), which involved a claim for indemnity arising out of a premises liability action against a motel owner, the district court enforced indemnity provisions that required one party to indemnify another for "any and all claims for damage to persons or property arising from, out of or relating to any occurrence on the Premises," and for "any and all claims, demands, costs and expenses arising from, out of or in any way relating to the operation of" the premises in question. The provisions here are narrower.  They are expressly limited to claims "arising out of" or "resulting from" Saybe's performance of services under the SA.  These provisions clearly and explicitly provide for liability in this case.  The Third-Party Complaint should not be dismissed.

As with Diakon's Counterclaim, Diakon's Third-Party Complaint may not be dismissed if the allegations plausibly show that Diakon is entitled to relief.  *Bell Atlantic*, 127 S.Ct. at 1965. Diakon has overcome this minimal standard with respect to its Third-Party Complaint. Dismissal is not appropriate here.

## IV.

## CONCLUSION

The Court should not dismiss the Counterclaim against Soto or the Third-Party Complaint against Saybe's.  Both seek indemnity relating to the claims Soto has asserted in the underlying action against Diakon.  These claims are covered by the express terms of the applicable indemnity provisions.  And indemnity under these circumstances is entirely appropriate.

Respectfully submitted,

SCOPELITIS, GARVIN, LIGHT,
  HANSON & FEARY, P.C.

*/s/James H. Hanson*
James H. Hanson
Robert L. Browning
R. Jay Taylor Jr.
Christopher C. McNatt Jr.

**Attorneys for Defendant/Counter-claimant/Third-Party Plaintiff, Diakon Logistics (Delaware) Inc.**

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that a copy of the foregoing was filed electronically this 24th day of

3   March, 2008.  Notice of this filing will be sent to the following parties by operation of the

4   Court's electronic filing system.  Parties may access this filing through the Court's system.

5        Derek J. Emge               David A. Huch

6        Emge & Associates         Law Offices of David A. Huch
         550 West C Street, Suite 1600   7040 Avenida Encinas, Suite 104

7        San Diego, California  92101     Carlsbad, California  92011

8          I hereby certify that on March 24, 2008, a copy of the foregoing was mailed by first class

9   United States mail, postage prepaid, to the following:

10       Todd J. Hilts
        Law Office of Todd J. Hilts

11     2214 Second Avenue
        San Diego, California  92101

12

13                                  */s/James H. Hanson*
                                     James H. Hanson

14                                    Robert L. Browning
                                    R. Jay Taylor Jr.

15                                    Christopher C. McNatt Jr.

16   h:\users\lnewton\rjt\diakonlog-10610\72-bysoto\pleadings\diakon opp to p mot to dismiss cc and 3pc final.doc

17

18

19

20

21

22

23

24

25

26

27

28