Todd J. Hilts (CSB No. 190711)
LAW OFFICE OF TODD J. HILTS
2214 2nd Ave
San Diego, CA 92101
Telephone (619) 531-7900
Facsimile  (619) 531-7904

Derek J. Emge (CSB No. 161105)
EMGE & ASSOCIATES
550 West C Street, Ste. 1600
San Diego, CA 92101
Telephone (619) 595-1400
Facsimile  (619) 595-1480

David A. Huch (CSB No. 222892)
LAW OFFICES OF DAVID A. HUCH
7040 Avenida Encinas, Suite 104
Carlsbad, CA 92011
Telephone (760) 402-9528
Facsimile  (760) 683-3245

Attorneys for Plaintiff, JOSUE SOTO, Individually, on Behalf of All Others Similarly Situated, on Behalf of All Other Aggrieved Employees, and on Behalf of the General Public

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE SOTO, Individually, On Behalf of All Others Similarly Situated, and on Behalf of the General Public, <br><br>    Plaintiff, <br><br> v. <br><br> DIAKON LOGISTICS (DELAWARE), INC., a foreign corp.; and DOES 1 through 50, inclusive, <br><br>    Defendants. <br><br> AND ALL COUNTER-CLAIMS | Case No.  08-CV-0033 L (AJB) <br><br> **CLASS ACTION** <br><br> **PLAINTIFF'S REPLY BREIF IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIM AS TO JOSUE SOTO AND THIRD PARTY COMPLAINT AS TO SAYBE'S LLC PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br> Date:  April 7, 2008 <br> Time: 10:30 a.m. <br> Judge: Hon. M. James Lorenz <br> Dpt: 14 <br><br> Original Complaint Filed: 12/5/2007 |

- 1 -

### I. THE PLAINTIFF CLASS' CLAIMS ARISE OUT OF TORT UNDER CALIFORNIA'S FUNDAMENTAL, STATUTORY LAW, NOT THE SERVICE AGREEMENT'S VIRGINIA CHOICE OF LAW PROVISION

Defendant, through its Counterclaim and Third Party Complaint, seeks to shift the focus of this case from its uniform misclassification of drivers as independent contractors rather than employees to an issue concerning the drivers' performance under unlawful and unenforceable service agreements. These efforts are misguided and fail to support either the Counterclaim or Third Party Complaint. By the language of the indemnification agreement itself, the agreement only addresses situations where there is a claim or liability "arising out of [Plaintiff's] performance of the services arising out of or relating to this Agreement." Where, as in the present situation, the claims arise out of **Defendant's own conduct**, the indemnification agreement can not even be triggered. For this reason, neither the Counterclaim nor the Third Party Complaint demonstrate any entitlement to relief and should therefore be dismissed. *Palomares v. Bear Stearns Residential Mortg. Corp.*, 2008 WL 686683, *3 (S.D. Cal. Mar 13, 2008).

#### A. The Plaintiff Class' Statutory and Regulatory Claims Arise In Tort and Are Not Dependent Upon the Service Agreements

All of the Plaintiff Class' claims are brought pursuant to the California Labor Code. It is well settled that these causes of action are tort claims. *Nally v. Grace Cmth. Church* (1988) 47 Cal.3d 278, 292 [a violation of a legal duty imposed by statute is a tort.] As a result, the Plaintiff Class' claims do not arise from the Service Agreement and are therefore not subject to the contract's choice of law clause.

Defendant's opposition brief fails to cite to a recent case nearly identical to the case at hand that addresses this very issue. In *Walker v. Bankers Life & Cas. Co.* (N.D. Ill., March 28, 2007) 2007 U.S. Dist. LEXIS 22818, a diversity class action under CAFA alleged that Bankers Life misclassified its California insurance agents as independent contractors rather than employees, and

denied the putative class members rights and benefits required under California statutory law.[1]  *Id.* at pp. * 3-4.

Just as is alleged by Defendant in the present matter, in *Walker*, Bankers Life argued that the relationship between the parties was governed by a written independent contractor agreement, which expressly disclaimed an employer-employee relationship.  *Id.* at p. * 2.  The contract also included a choice of law provision, under which Bankers Life argued Illinois law should apply:

> Bankers Life argues Walker's claims are based on construction of the contract because the alleged misclassification is on the face of the contract and arises from the parties' understanding of their relationship at the time they entered into the contract.  *Id.* at pp. * 13-14.

However, the district court summarily rejected Bankers Life's theory:

> Walker's claims are not dependent on the contract. She does not allege a wrong based on interpretation or construction of the contract. She alleges she was an employee, not an independent contractor. **Under Illinois and California law, the determination of whether a worker is an employee or an independent contractor is based on a multi-factor examination of the employment relationship. Contractual language is not determinative, nor is it listed as a factor. Walker's claims are not related to the parties' contractual relationship, but rather involve the parties' actual relationship. Her claims could exist without the contract.** In the absence of the contract, Walker could allege that Bankers Life misclassified her as an independent contractor to avoid payment of benefits and expenses. The contract's choice of law clause does not govern her tort claims. [Citations omitted.] [Emphasis added.]  *Id.* at pp. * 14-15.

Nearly identical to the facts of *Walker*, the putative class in the present matter has not brought any causes of action arising out of an interpretation or construction of the contract.  Rather, the putative class simply seeks to enforce fundamental, statutory rights afforded to California employees.  As a result, Defendant's reliance on the Service Agreement in the present dispute is misplaced.

---

[1] As is true here, the plaintiffs in *Walker* sought reimbursement of employment related expenses under California Labor Code § 2802 and additional equitable remedies under California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et. seq.*)  *Id.* at p. * 12.

- 3 -

### B. The Plaintiff Class' Claims Seek to Enforce Fundamental Rights Under California Statutory and Regulatory Law

Defendant erroneously asserts that fundamental policies of California are not implicated in the present wage and hour dispute. California courts have repeatedly affirmed California's strong public policy favoring employees when interpreting the California Labor Code and Industrial Welfare Commission Wage Orders:[2]

> [S]tatutes governing conditions of employment are construed broadly in favor of protecting employees. We construe wage orders, as quasi-legislative regulations, in accordance with the standard of statutory interpretation. *Bearden v. U.S. Borax, Inc.* (2006) 138 Cal. App. 4th 429, 435.

A recent California decision applied this rationale in the context of pre-certification discovery of the identity of class members. Here, the Court of Appeal ordered that disclosure is required under California's strong public policy in favor of employees' right to wages:

> The balance of opposing interests here tilts even more in favor of the court's disclosure order than it did in *Pioneer*, **because at stake here is the fundamental public policy underlying California's employment laws. '[T]he prompt payment of wages due an employee is a fundamental policy of this state**.' [Citation.] *Belaire-West Landscaping, Inc. v. Superior Court* (2007) 149 Cal. App. 4th 554, 562. [Emphasis added.]

Similarly, the Ninth Circuit has held that California's statutorily guaranteed wage and hour rights are not subject to waiver by a collective bargaining agreement. In *Valles v. Ivy Hill Corp.* (9th Cir. 2005) 410 F.3d 1071, the Court determined that wage and hour provisions in the California Labor Code are "designed to protect individual employees," "address some of 'the most basic demands of an employee's health and welfare' [citation]," and Labor Code section 219, subdivision (a) makes them "plainly nonnegotiable." *Id.* at 1081-1082. Thus, the federal courts are to "preserve state authority in areas involving minimum labor standards." *Id.* at 1076.

---

[2] The California Supreme Court has explained: "[T]he Industrial Welfare Commission (IWC) is empowered to formulate regulations (known as wage orders) governing employment in the State of California." *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1084. "And while the DLSE in its adjudicatory role [citations omitted] is of course obligated to follow the substantive law, there is no question that IWC wage orders are among the valid sources thereof." *Id.* at 1089 [*citing* Labor Code § 517.]

- 4 -

Thus, on appeal the Ninth Circuit reversed the district court's rulings, holding that the class action claims under the Labor Code were not subject to preemption. *Id.* at 1081. The *Valles* Court explained that California's statutory wage and hour laws cannot be trumped by private agreement:

> The California state legislature subsequently codified the amended meal period requirements and the penalties created by Wage Order 1-2001. In so doing, it made clear that the substantive provisions mandating meal periods applied to all employers, including signatories to collective bargaining agreements, Cal. Lab. Code § 226.7, and that **the statutory requirements could not "in any way be contravened or set aside by a private agreement, whether written, oral, or implied**." Cal. Lab. Code § 219. *Id.* at 1079. [Citations omitted.] [Emphasis added.]

Accordingly, Defendant falsely assumes that the present dispute simply involves the enforcement of the parties' contractual promises. To the contrary, the putative class' claims seek to enforce California's fundamental statutory requirements, which cannot be waived or altered by private agreement. Thus, not only is Virginia law inapplicable, the indemnification agreement that is the sole basis for both the Counterclaim and Third Party Complaint is inapplicable to the allegations raised in Plaintiff's compliant.

## II. NEITHER CALIFORNIA NOR VIRGINIA LAW SUPPORT DEFENDANT'S STRAINED INTERPRETATION OF THE INDEMNIFICATION AGREEMENT

Even if the indemnification agreement is triggered by a claim arising from Defendant's tortuous conduct and even if Virginia law applied to the interpretation of that agreement, the result would be the same – Defendant has no plausible entitlement to the requested relief. Defendant cites to no authority holding that a general indemnification agreement can be construed to require an indemnitor to be liable for the attorneys' fees, costs and settlement or judgment of the indemnitee in a lawsuit by the indemnitor against the indemnitee. Instead, Defendant relies exclusively on out-of-context dicta found in *Chesapeake & Ohio Ry. Co. v. Clifton Forge-Waynesboro Telephone Co.*, 224 S.E.2d 317 (Va. 1976).

Specifically, Defendant states that under Virginia law, "parties to a contract may agree that one party will bear all costs and losses … for which the other party is at fault." Defendant's

opposition, 7:25-26 (citing *Chesapeake*). This general statement of law has been taken out of context and inappropriately applied to the present interpretation of an indemnification agreement. The *Chesapeake* case, however, sought to answer the question of whether an <u>exculpatory clause</u> in a contract can apply to <u>common carrier liability</u> or whether it should be deemed void as against public policy. That case did not discuss *indemnification* clauses, attorneys' fees or litigation by an indemnitor against an indemnitee.

Further, the contract at issue in *Chesapeake* **specifically identified both the exculpatory provision and the parties to which it was intended to apply:** "The Licensee hereby assumes all risks of loss or damage of any nature to said wire line crossing and appurtenances, however caused, and releases the Railway Company from all liability on account thereof." *Id.* at 859. By contrast, the general indemnity provision in our case fails to evidence an agreement between the parties for handling a situation where Soto or Saybes sues Diakon for losses resulting solely from Diakon's violation of California's labor laws. Instead, the indemnity provision looks at liability caused by *Plaintiff's* conduct such as 1) injury or death to another; 2) damage to property of another and 3) violation of law by Plaintiff.[3]

---

[3] Based upon the doctrine of *ejusdem generis*, Defendant's enumerated examples in the Service Agreement (injury or death; damage to property; and violation of law by the Contractor) limit the application of the indemnity clause in the Service Agreement to third parties. Despite Defendant's suggestion to the contrary, the application of *ejusdem generis* is not limited to legislative interpretation. The doctrine has often been used to assist in the interpretation of *contractual* language.
For example, in *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi)* 368 F.3d 491, 499-500 fn. 8 (5th Cir. 2004), the Fifth Circuit cites to the maxim in the context of determining insurance policy coverage (use of "mortgage" and catch-all phrase "other security instrument" analyzed). In *Allen v. Thomas* 161 F.3d 667 (11th Cir. 1998), the Eleventh Circuit relies upon, in part, "the *ejusdem generis* canon of construction" in determining that the phrase "any other form of relief from life imprisonment" in a written plea agreement did not include federal habeas corpus relief. *Id.* at p. 671. ("In Allen's plea agreement, the items of the series that precede the general catch-all language, including 'parole, commutation of his sentence, [and] reprieve,' all refer to a reduction of the sentence, not to relief from the underlying conviction itself.")
Similarly, in *C. Sanchez & Son, Inc. v. United States* 6 F.3d 1539 (Fed. Cir. 1993), the Federal Circuit cites to the legal maxim in the context of complex government contractor litigation. ("There is merit to Sanchez' argument that the omission of trenchers from the lengthy list in the Safety Manual evokes the rule of *ejusdem generis*. As a minimum, the specific listing in the Safety Manual of a number of included machines, and the specific listing of a number of excluded machines, establishes no presumption that machines not mentioned are nonetheless included.") *Id.* at p. 1544

- 6 -

Similar to California law (*See, Price v. Shell Oil Co.*, 2 Cal.3d 245 (1970), cited in Plaintiff's moving papers, Doc. No. 20), Virginia law supports indemnification agreements that are not against public policy, but also requires that "the language must clearly and definitely show an intention to indemnify against a certain loss or liability." *Meritor Sav., F.A. v. Duke,* 31, 187 (Va. Cir. Ct. 1993).

In the present case, the agreement remains silent on indemnity for lawsuits by the indemnitor against the indemnitee for the latter's violations of state labor laws. Had the parties actually wished to enter into such an agreement, they certainly could have included language such as "including claims brought by Contractor against the Company for the Company's violation of California's labor laws." This, of course, was not done. Even if the Service Agreement were deemed lawful and enforceable, this failure to "clearly and definitely show an intention to indemnify against a certain loss or liability" prohibits the expansion of the agreement to the extent sought by Defendant herein. This is true whether applying California law or Virginia law.

### III.   DEFENDANT'S EXPANSIVE INTERPRETATION OF THE INDEMNIFICATION CLAUSE MAKES THE CLAUSE VOID UNDER PUBLIC POLICY

Defendant seeks to convince the Court that Plaintiff's "arguments regarding the purported impropriety of Diakon's self-indemnification are irrelevant to his obligation in that regard." Yet, Defendant cites no authority supporting this dismissive position because it knows that it is the underlying "impropriety" (violations of California labor laws) that make its interpretation of the indemnification agreement voidable. Whether viewed under California law or Virginia law, the outcome is the same: contracts advancing illegal activity will not be enforced. *Kaiser Steel Corp. v. Mullins* 455 U.S. 72, 77 (1981).

The present case seeks a determination of whether Defendant misclassified its drivers as independent contractors and consequently violated California labor laws ensuring minimum wages, reimbursement of business expenses, meal breaks and rest periods. Allowing Defendant's overbroad interpretation of the general indemnity agreement would allow Defendant to forever escape liability for its own violations of California labor laws. Under this strained interpretation,

Defendant could continue to avoid California labor laws, knowing that if a driver succeeded in a lawsuit such as the present one, Defendant could simply seek indemnification of the entire judgment and its defense fees and costs from that driver.

Even assuming the Service Agreement is lawful and enforceable, the effect of a misinterpretation of the breadth of the indemnification provision would be chilling. Not only would there be a direct and substantial dis-incentive for drivers to avail themselves of the courts to enforce their rights as misclassified employees, but there would be no incentive for Defendant to comply with the California Labor Code. This perpetual "get out of jail free" card is against public policy and renders Defendant's interpretation of the indemnification agreement void and unenforceable. As the Supreme Court stated in *Kaiser Steel Corp.*, "There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law." *Id.* at 77.

## IV. CONCLUSION

Defendant's attempt to invoke Virginia law to somehow show a plausible entitlement to relief is mistaken and fails to support their theory that the indemnification clause applies to the present situation. The present case analyzes Defendant's tortious noncompliance with the California Labor Code and is therefore not a claim arising out of Plaintiff's performance under the service agreements. The indemnification agreement does not contain any evidence that the parties intended to have it apply to a lawsuit brought by a driver against Defendant. Finally, if Defendant's desired interpretation were given affect, it would simply allow Defendant to forever sidestep compliance with this state's labor laws. As such, the indemnification clause would be void for being against public policy.

Based upon the foregoing argument and citation to authority, Plaintiff/Cross-Defendant/Third-Party Defendant SOTO submits that Defendant's claims for indemnity must fail as a matter of law and therefore respectfully request that the Court grant this Motion to Dismiss the Counterclaim as to Plaintiff Josue Soto and Third-Party Complaint as to Third-Party Defendant Saybe's LLC.

- 8 -

DATED: March 28, 2008							EMGE & ASSOCIATES

										 s/  Derek J. Emge
										DEREK J. EMGE
										550 West "C" Street, Suite 1600
										San Diego, CA  92101

										LAW OFFICE OF TODD J. HILTS
										Todd J. Hilts
										2214 2nd Ave
										San Diego, CA 92101

										LAW OFFICES OF DAVID A. HUCH
										David A. Huch
										7040 Avenida Encinas, Suite 104
										Carlsbad, CA 92011

										Attorneys for Plaintiff and Cross-Defendant, JOSUE SOTO, Individually, on behalf of all others similarly situated, all aggrieved employees, and on behalf of the General Public and attorneys for Third-Party Defendant SAYBE'S LLC

- 9 -