SCOPELITIS, GARVIN, LIGHT,
   HANSON & FEARY
James H. Hanson, *Pro Hac Vice,* Ind. Bar No. 08100-49
jhanson@scopelitis.com
Robert L. Browning, *Pro Hac Vice,* Ind. Bar No. 15128-49
rbrowning@scopelitis.com
R. Jay Taylor Jr., *Pro Hac Vice,* Ind. Bar No. 19693-53
jtaylor@scopelitis.com
10 West Market Street, Suite 1500
Indianapolis, IN 46204
(317) 637-1777
Fax: (317) 687-2414

SCOPELITIS, GARVIN, LIGHT,
   HANSON & FEARY, LLP
Christopher C. McNatt, Jr., Cal. Bar No. 174559
cmcnatt@scopelitis.com
2 North Lake Avenue, Suite 460
Pasadena, CA 91101
(626) 795-4700
Fax: (626) 795-4790

Attorneys for Defendant, DIAKON LOGISTICS
(DELAWARE), INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSUE SOTO, GHAZI RASHID, MOHAMED ABDELFATTAH, on behalf of All Aggrieved Individuals, All Others Similarly Situated, and the General Public, <br><br> Plaintiffs/Counterdefendant, <br><br> v. <br><br> DIAKON LOGISTICS (DELAWARE), INC., a foreign corporation; and DOES 1 through 50, inclusive, <br><br> Defendants/Counterplaintiff. <br><br> DIAKON LOGISTICS (DELAWARE) INC., <br> Third-Party Plaintiff, <br> v. <br> SAYBE'S, LLC, <br> Third-Party Defendant | **CASE NO. 08-CV-0033-L-AJB** <br><br> **CLASS ACTION** <br><br> **DIAKON LOGISTICS (DELAWARE) INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS** <br><br> The Honorable Judge M. James Lorenz <br> Location:    Courtroom 14 <br> Hearing Date: July 14, 2008 <br> Time:         10:30 a.m. |

Defendant/Counterplaintiff, Diakon Logistics (Delaware) Inc. ("Diakon"), respectfully submits the following Memorandum of Points and Authorities in Support of its Motion to Dismiss the claims asserted by Plaintiffs, Josue Soto ("Soto"), Ghazi Rashid ("Rashid"), and Mohamed Abdelfattah ("Abdelfattah"), in their individual capacities.

## I. INTRODUCTION

Plaintiffs allege that Diakon misclassified them as independent contractors during the time they provided transportation services for Diakon's customers, thereby violating various provisions of the California Labor Code and Business & Professions Code. This is not so. In fact, with the limited exception of Soto for a six-month period of time, Plaintiffs never contracted with Diakon directly.[1] Instead, they each formed distinct business entities, and those business entities in turn entered into written agreements with Diakon (the "Service Agreements"). Although Plaintiffs each signed the Service Agreements with Diakon, they did so in their representative capacities only, as owners of the business entities with which Diakon contracted. In other words, Plaintiffs performed services for their own businesses, not Diakon.

Plaintiffs' First Amended Complaint pretends these businesses do not exist. Nowhere in their filing do Plaintiffs discuss or even acknowledge the business entities they formed and for which they performed services. In fact, they only mention the Service Agreements between those business entities and Diakon twice and even then suggest that the contracts are between Diakon and Plaintiffs directly. This is simply not true. Plaintiffs are not parties to the Service

---

[1] Soto contracted directly with Diakon prior to November 2, 2005. Soto and Diakon entered into a Service Agreement dated May 4, 2005 (the "Soto Service Agreement"). A true and accurate copy of the Soto Service Agreement is attached as *Exhibit A*. Soto performed transportation services for Diakon's customers under the Soto Service Agreement until November 2, 2005. Consequently, Soto's claims arising under the Soto Service Agreement dating from May 4, 2005 to November 2, 2005 are not the subject of Diakon's Motion to Dismiss for lack of standing, as he is a real party in interest under that contract.

Agreements, and therefore are not real parties in interest under those agreements. It is well-settled that only a real party in interest may maintain an action, and Plaintiffs are not real parties in interest with respect to the Service Agreements. For this reason, Plaintiffs may not sue Diakon in their individual capacities. Consequently, the Court should grant Diakon's Motion to Dismiss and dismiss the claims asserted by Plaintiffs.

## II. BACKGROUND

### A. Diakon's California Operations

Diakon is an interstate motor carrier providing logistics and home delivery services to large retailers in California, including Sears, Roebuck and Co., Jerome's Furniture, Inc., and Ethan Allen Interiors, Inc. To facilitate the home delivery component of its business, Diakon utilizes the services of individual and corporate transportation service providers that enter into written service agreements with Diakon (the "Contractors").

### B. Plaintiffs' Business Entities

Although Plaintiffs have filed suit in their individual capacities, this misrepresents the true nature of their business relationship with Diakon. All three Plaintiffs are owners of distinct business entities. Soto organized Saybe's, LLC, a California limited liability company, on May 31, 2005. Rashid incorporated Rashid Trucking, Inc., a California corporation (No. C2755777), on July 8, 2005. And Abdelfattah incorporated Abdul Trucking, Inc., a California corporation (No. C2675803), on September 24, 2004 (collectively the "Contracting Parties"). All three of Plaintiffs' businesses were validly formed, organized under the laws of California, and remain ongoing concerns to this day.[2]

---

[2] Diakon has attached as *Exhibit B* documentation maintained by the California Secretary of State showing the names and formation dates of Plaintiffs' respective business entities. *See generally* http://kepler.sos.ca.gov/list.html (searchable database of businesses registered with the

Continued

Diakon contracted exclusively with Plaintiffs' businesses; Diakon did *not* contract with Plaintiffs directly. Saybe's, LLC entered into a Service Agreement with Diakon on November 2, 2005, and another Service Agreement with Diakon on November 2, 2006 (collectively the "Saybe's, LLC Service Agreements"). Rashid Trucking, Inc. entered into a Service Agreement with Diakon on July 15, 2005, and another Service Agreement on May 26, 2006 (collectively the "Rashid Trucking, Inc. Service Agreements"). And Abdul Trucking, Inc. entered into a Service Agreement with Diakon on October 9, 2005, a second Service Agreement on July 31, 2006, and a third Service Agreement on October 13, 2006 (collectively the "Abdul Trucking, Inc. Service Agreements").[3] Diakon dealt directly with Plaintiffs' business entities during the terms of their respective Service Agreements.

### C. The Court May Consider the Service Agreements without Converting this Motion into One for Summary Judgment

Ordinarily a party may not rely on matters outside the pleadings in moving to dismiss under Rule 12. *See* Fed.R.Civ.P. 12(d). This rule does not apply, however, where the plaintiff has omitted from the complaint materials that are integral to its claims. *See, e.g.*, *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiffs

---

California Secretary of State). The Court may take judicial notice of these documents. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). In fact, this Court has previously taken judicial notice of documentation maintain by the Secretary of State and accessible via its website. *See Jaliwa v. Concerned Citizens of S. Cent. L.A.*, No. 06-CV-2617, 2007 WL 2021818, at *3 n.1 (S.D. Cal. July 10, 2007) ("The Court takes judicial notice that this information is displayed when a business search is performed in the business portal section of the California Secretary of State's webpage at http://www.sos.ca.gov."); *see also Smelt v. County of Orange*, 447 F.3d 673, 676 n.4 (9th Cir. 2006) ("We note that documents over which we have taken judicial notice show that Smelt and Hammer filed forms with the California Secretary of State on December 16, 2004").

[3] True and accurate copies of the Saybe's, LLC, Rashid Trucking, Inc., and Abdul Trucking, Inc. Service Agreements are attached as *Exhibits C*, *D*, and *E*, respectively.

complaint necessarily relies."); *accord Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 927 (9th Cir. 2006); *Marsh v. San Diego County*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) (citing *Parrino*, 146 F.3d at 705–06). This exception to the rule is intended to "prevent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based . . . ." *Parrino*, 146 F.3d at 706.

Plaintiffs failed to attach to their First Amended Complaint the numerous contracts discussed above, all of which Diakon has submitted in support of its Motion to Dismiss: the Soto Service Agreement, the Saybe's LLC Service Agreements, the Rashid Trucking, Inc. Service Agreements, and the Abdul Trucking, Inc. Service Agreements. Plaintiffs have, however, expressly mentioned these agreements in their First Amended Complaint. Under the subheading "Class Allegations," Plaintiffs define the class of plaintiffs for purposes of this litigation as:

> All persons presently and formerly employed by Defendant in the State of California as delivery personnel during the Class Period *who were subject to the 'Service Agreement' (or similar document)*, which categorized them as independent contractors and not employees.

*First Amend. Compl.* ¶ 30 (emphasis added). Plaintiffs again refer to the Service Agreements later in the same section: "Defendant requires each individual to execute a pre-printed document, captioned 'Service Agreement.'" *Id.* ¶ 34(a).

These contracts are integral to Plaintiffs' allegations because, without them, the Court will be incapable of fully evaluating Plaintiffs' claim that they were employees — and not independent contractors — of Diakon. Plaintiffs have conceded as much by expressly referring to the Service Agreements in their First Amended Complaint. *See id.* ¶¶ 30, 34; *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (documents referenced in pleading may be considered in ruling on Rule 12(b)(6) motion). Moreover, it is beyond question that the terms of the contract between a claimant and his putative employer are relevant to the Court's inquiry on this point. *See, e.g., Estrada v. Fedex Ground Package Sys.*, Inc., 154 Cal. App. 4th 1 (Cal. Ct.

App. 2007) (relying on terms of contract between drivers and delivery company to evaluate employment status).

Consequently, the Court may consider the contracts submitted by Diakon in support of its Motion to Dismiss without needing to convert the instant motion into one for summary judgment. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding*, 949 F.2d 42, 44 (2d Cir. 1991) (district court properly considered stock purchase agreement submitted by defendant in support of its motion to dismiss, even not attached to plaintiffs' complaint, because the contract was integral to the plaintiffs' claims).

## III. ARGUMENT

Plaintiffs cannot maintain their claims against Diakon because they are not real parties in interest under the Service Agreements. The real-party-in-interest requirement ensures that a plaintiff asserts only his own legal rights and not those of third parties. Applying this rule, courts in California and other jurisdictions have routinely dismissed claims by plaintiffs attempting to enforce a contract to which the plaintiff is not a party, even where, as here, the plaintiff is the sole shareholder of the corporation that is a party to the contract. Because Plaintiffs are not parties to the Service Agreements and have only signed those contracts in their representative capacities, they are not real parties in interest. Consequently, as shown below, the Court should dismiss their claims against Diakon.

### A. Standards Governing a Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure tests of the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Generally, the district court must accept all factual allegation in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Bell Atantic. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *Outdoor Media Group v. City of Beaumont*, 506 F.3d 895, 899

(9th Cir. 2007). However, a district court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, dismissal pursuant to Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B.     Prudential Standing Requires that Plaintiffs be Real Parties in Interest

It is well-settled that a plaintiff must satisfy prudential standing requirements to invoke federal jurisdiction. *Doran v. 7-Eleven, Inc.*, 506 F.3d 1191, 1195 (9th Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "'Prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights.'" *United States v. Lazarenko*, 476 F.3d 642, 650 (9th Cir. 2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751(1984)); *Warth*, 422 U.S. at 498 (prudential standing requires that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

The prudential standing requirement is embodied in Rule 17 of the Federal Rules of Civil Procedure. Rule 17 provides, in part, that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1); *see also* Cal. Code Civ. Proc. § 367 ("Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."). In a diversity case, such as this one, the real party in interest is determined according to state law. *Sindicato De Empleados Y v. Credit Managers Ass'n of Cal.*, No. 07-CV-2365, 2007 U.S. Dist. LEXIS 93523, at *10 (S.D. Cal. Dec. 20, 2007) (citing *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1094 (9th Cir. 2004)); *McNeil Constr. Co. v Livingston State Bank*, 300 F.2d 88, 90 n.5 (9th Cir. 1962).

Under California law, a "real party in interest" is defined as "the person possessing the right sued upon by reason of the substantive law." *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 109 Cal. App. 4th 1162, 1172–73 (Cal. Ct. App. 2003). Put differently, "the real party in interest is the party who has title to the cause of action, i.e., the one who has the right to maintain the cause of action." *Vaughn v. Dame Construction Co.*, 223 Cal. App. 3d 144, 147 (Cal. Ct. App. 1990).

It is well-settled that "[s]omeone who is not a party to [a] contract has no standing to enforce the contract . . . ." *Windham*, 109 Cal. App. 4th at 1173 (citing *Hatchwell v. Blue Shield of California*, 198 Cal. App. 3d 1027, 1034 (Cal. Ct. App. 1998)). This is true even if the plaintiff is the sole shareholder of the contracting corporation. *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir. 1969) (applying California law) ("even though a stockholder owns all . . . of the stock in a corporation, such a fact of itself does not authorize him to sue as an individual"); *accord Vinci v. Waste Management*, No. C-94-1946, 1994 U.S. Dist. LEXIS 12071 (N.D. Cal. Aug. 19, 1994). As will be seen, because Plaintiffs are not parties to the various contracts between their business entities and Diakon, they are not real parties in interest under Rule 17 and therefore may not maintain their individual claims against Diakon.

### C. Plaintiffs Lack Standing Because They are not Real Parties in Interest under the Service Agreements

As discussed above, all three Plaintiffs have created distinct business entities: Saybe's, LLC; Rashid Trucking, Inc., and Abdul Trucking, Inc. These business entities — not Plaintiffs — entered into Service Agreements with Diakon, and Diakon dealt with Plaintiffs only through their respective business entities. Consequently, any claims against Diakon arising during the terms of the Service Agreements must be asserted by one or more of Plaintiffs' business entities, the true real parties in interest with respect to those contracts. Any other conclusion would entirely disregard the corporate form, a result strongly disfavored under California law. *See*

*Playboy Enters. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1098 (S.D. Cal. 1999) ("the corporate form will be disregarded only in narrowly circumscribed circumstances . . . .") (citing *Mesler v. Bragg Mgm't Co.*, 702 P.2d 601, 606 (Cal. 1985)).

In fact, to permit Plaintiffs to proceed directly against Diakon and ignore their business entities, the Court would have to first pierce the veils of Plaintiffs' businesses and hold that they are merely Plaintiffs' alter egos. But Plaintiffs have not asserted any claim or fact in their First Amended Complaint supporting an inference that Plaintiffs' businesses are alter egos, and it is unclear that the party controlling the business entity may even pierce its own corporation's veil in any event. *See Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980 (Cal. Ct. App. 1995) (alter ego "is not a doctrine that allows the persons who actually control the corporation to disregard the corporate form"). Absent such allegations, the Court must respect the business entities created by Plaintiffs and dismiss their individual claims against Diakon, except for the May 4 to November 2, 2005 time period Soto contracted with Diakon directly.

Moreover, Plaintiffs all voluntarily chose to create business entities and contract with Diakon as those businesses for the many significant benefits such an arrangement. They should not be permitted to ignore these independent and legitimate business entities now merely because they stand in the way of Plaintiffs asserting claims against Diakon directly. *See Webber v. Inland Empire Invs.*, 74 Cal. App. 4th 884, 901 (Cal. Ct. App. 1999) ("parties who determine to avail themselves of the right to do business by means of the establishment of a corporate entity must assume the burdens thereof as well as the privileges").

Federal courts applying California law have steadfastly respected the corporate form in similar circumstances. For example, in *Erlich v. Glasner*, the Ninth Circuit squarely addressed whether a plaintiff may assert a claim "for damages suffered by a corporation, of which he is a stockholder." *Id.* at 227. The plaintiff, who along with his wife owned all of the stock in West

Coast Poultry Company, attempted to assert an individual claim under the Civil Rights Act for damages sustained by his company. *Id.* On appeal, the Ninth Circuit held that, "a stockholder may not maintain an action in his own behalf for a wrong done by a third person to the corporation," even though the stockholder "owns all, or practically all, of the stock in a corporation." *Id.* at 228. The Ninth Circuit premised this holding, in part, on the fact that permitting the individual to proceed in his individual capacity would "ignore the corporate entity." *Id.* The Court continued:

> Simply stated, the claimed damages are those of the corporation, not those of the appellant. We find nothing . . . which would permit appellant to circumvent the rule of law just stated, completely avoid the corporate entity and thus maintain an action in his own name. Appellant cannot maintain this action.

*Id. See also Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (applying California law) ("Generally, a [shareholder] may not maintain an action in his own behalf for a wrong done by a third person to the corporation . . . , for such an action would authorize multitudinous litigation and ignore the corporate entity. . . .").

In fact, California courts have gone so far as to dismiss claims by plaintiffs attempting to enforce a contract to which the plaintiff is not a party, even where the plaintiff is the sole shareholder of the business that is a party to the contract. For example, in *Fladeboe v. Am. Isuzu Motors, Inc.*, 150 Cal. App. 4th 42, 55 (Cal. Ct. App. 2007), Ray Fladeboe "was the sole shareholder and the president of Ray Fladeboe Lincoln-Mercury, Inc. ("RFLM")," a car dealership that sold Isuzu vehicles. *Id*. at 49. Fladeboe brought suit in his individual capacity against Isuzu Motors alleging that Isuzu unreasonably withheld consent to a request made by RFLM to transfer its Isuzu contract to a different dealership. *Id.* at 48. Fladeboe's claims were based on a Dealership Agreement between RFLM and Isuzu, two corporate entities. *Id.* at 49. The trial court held that Fladeboe did not have standing to assert claims under Cal. Code Civ.

Proc. ¶ 367 (California's analogue to Rule 17) on behalf of RFLM, even though he was the sole shareholder and president of that corporation. *Id.*

The California Court of Appeals agreed, "readily conclud[ing]" that Fladeboe "had no standing to seek declaratory relief or to assert any of the claims alleged in the complaint." The court continued:

> He was never an Isuzu dealer. He was not a party to the Dealer Agreement with Isuzu . . . . Fladeboe was the sole shareholder of RFLM . . . . *As a shareholder, Fladeboe did not have standing to assert corporate claims*, except in a derivative action.

*Id.* at 55 (emphasis added). Consequently, the Court of Appeals affirmed the trial court's dismissal of Fladeboe's individual claims for lack of standing.

Similarly, in *Vinci v. Waste Management*, Vinci owned Vinci Enterprises, Inc. ("VEI"), a recycling company. 1994 U.S. Dist. LEXIS 12071, at *1. VEI entered into a written settlement agreement with Waste Management, Inc. ("WM") whereby WM allegedly agreed to provide VEI with substantial quantities of recyclable materials. *Id.* After the parties' business relationship soured, Vinci filed suit in his individual capacity against WM alleging, among other claims, that WM breached the settlement agreement. *Id.* at *20.

In response, WM filed a motion to dismiss under Rule 12(b)(6) alleging, inter alia, that Vinci lacked standing to assert a claim for breach of contract against WM in his individual capacity because the settlement agreement was between VEI and WM only, two corporate entities. *Id.* at *21. The Northern District of California agreed with WM, "It is VEI, not Vinci, that contracted with Waste Management; therefore, only VEI can seek judicial enforcement of the agreement." *Id.* Consequently, the District Court dismissed Vinci's claim for breach of contract against WM. *Id See also Nelson v. Anderson*, 72 Cal. App. 4th 111 (Cal. Ct. App. 1999) (member of two-person corporation did not have standing to assert claims on behalf of corporation individual capacity); *Miller v. McColgan*, 110 P.2d 419 (Cal. 1941) ("It is

fundamental, of course, that the corporation has a personality distinct from that of its shareholders, and that the latter neither own the corporate property nor the corporate earnings.").[4]

In light of the foregoing authorities, the Court should deny Plaintiffs attempt to ignore their business entities and hold that Plaintiffs are not real parties in interest under Rule 17 of the Federal Rules of Civil Procedure. Their claims must be dismissed.[5]

## IV. CONCLUSION

The Court should dismiss the claims asserted by Plaintiffs in their individual capacities because they are not real parties in interest under the Service Agreements and therefore lack standing.

Respectfully submitted,

SCOPELITIS, GARVIN, LIGHT,
  HANSON & FEARY

*/s/James H. Hanson*
James H. Hanson
Robert L. Browning
R. Jay Taylor Jr.
Christopher C. McNatt Jr.

Attorneys for Defendant,
Diakon Logistics (Delaware) Inc.

---

[4] Courts in other jurisdictions have reached the same conclusion. *See, e.g.*, *Lans v. Digital Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001) (plaintiffs could not maintain patent infringement suit in his individual capacity where transferred the patent to a company that he created and of which he was the sole shareholder); *Delor v. Intercosmos Media Group, Inc.*, 232 F.R.D. 562 (E.D. La. 2005) (plaintiff's claims dismissed with prejudice under Rule 17 where evidence established that domain name was registered to corporation he created and owned; plaintiff could not assert claim on behalf of corporation).

[5] Diakon restates its position that Soto's claims arising under the Soto Service Agreement are not subject to dismissal for lack of prudential standing. Soto executed the Soto Service Agreement with Diakon in his personal capacity, and therefore is a real party in interest under that contract. However, to the extent Soto has asserted claims against Diakon that post-date the formation of Sabye's, LLC arising under either of the Saybe's, LLC Service Agreements, Soto is not a real party in interest under those agreements and so may not maintain those claims.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on May 5, 2008. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Derek J. Emge<br>Emge & Associates<br>550 West C Street, Suite 1600<br>San Diego, California  92101 | David A. Huch<br>Law Offices of David A. Huch<br>7040 Avenida Encinas, Suite 104<br>Carlsbad, California  92011 |

Todd J. Hilts
Law Office of Todd J. Hilts
2214 Second Avenue
San Diego, California  92101

                                              */s/James H. Hanson*
                                              James H. Hanson

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
10 West Market Street, Suite 1500
Indianapolis, Indiana 46204
(317) 637-1777
(317) 687-2414 Fax
e-mail: jhanson@scopelitis.com