# EXHIBIT A

# JOSUE SOTO SERVICE AGREEMENT


1

## SERVICE AGREEMENT
(Revised 9/04)

DATED AS OF May 4, 2005

DIAKON LOGISTICS (DELAWARE), INC., a Delaware corporation (together with its successors and assigns, the "Company") and Jesue Saybe Soto, (together with its successors and permitted assigns, the "Contractor") hereby agree as follows:

PRELIMINARY STATEMENT. The Company desires to procure, and the Contractor desires to provide, certain delivery services for customers of the Company as provided herein.

SECTION 1. **Contractor Services**. From time to time, upon request by the Company, the Contractor, in a good and workmanlike manner, shall deliver consumer items for the Company's customers and perform such other related services as may be necessary to serve the Company's customers. In performing services under this Agreement, the Contractor shall have control of its work and the manner in which it is performed including, but not limited to, such matters as choice of any routes, points of service of equipment, rest stops, and timing and scheduling of customer deliveries. Contractor acknowledges and agrees that the Company does not guarantee any specific number of shipments or amount of revenue to Contractor during the term of this Agreement.

SECTION 2. **Relationship of Parties**. The parties intend that the Contractor shall act as an independent contractor of the Company. This Agreement is not intended to create in any manner whatsoever an employer-employee, principal-agent, master-servant, partnership or joint venture relationship between the Contractor and the Company. In recognition of the independent contractor relationship that exists between the parties, it is acknowledged that Contractor has the right to determine the manner and means of performing all work hereunder. Contractor further has the right to decide what work to perform under this Agreement, provided, however, that when work is accepted by Contractor, the work will be performed in accordance with the terms of this Agreement and the requirements of Company's customers. In no event will any contracts or statements of Company or its employees be deemed, construed or implied to control, direct or infringe on Contractor's right to control or actually control the manner and means of Contractor's performance of the services to be provided under this Agreement.

SECTION 3. **Fees**. The Company shall pay to the Contractor fees in connection with the services performed by the Contractor pursuant to this Agreement in accordance with Exhibit A attached hereto.

SECTION 4. **Costs and Expenses**. The Contractor shall, at its own expense, provide its own vehicle or vehicles and furnish such labor as is necessary to fulfill its obligations under this Agreement. All persons furnishing such labor shall be deemed to be employees of Contractor, and not of Company. Except as provided in the next succeeding sentence, all costs and expenses incurred by the Contractor in connection with the provision by the Contractor of services pursuant to this Agreement, including without limitation, the cost and expense of vehicle maintenance, all equipment and supplies used by Contractor and salaries, wages, social security, withholding taxes, benefits and all other items of expense of all employees of the Contractor, shall be borne by the Contractor. The Company may, in the event of a customer request or for necessary safety and security precautions, require that the Contractor's delivery personnel wear uniforms as designated by the Company, which shall be purchased by Contractor or its employees at its or their own expense. The Company may, at its option, require that the Contractor's delivery vehicles display the logo of the Company or its customer or other markings.

The Company may, at its option, require Contractor to furnish proof, within ten (10) days of each due date for payment of required social security, withholding taxes and other employment taxes, that all such taxes have been paid.

DIAKON OWNER-OPERATOR AGREEMENT

2

SECTION 5.  **Insurance.**  The Contractor shall, at its own expense, maintain at all times during the existence of this Agreement the following insurance with such coverage and in such amounts as the Company may from time to time require: (a) comprehensive public liability insurance against all claims arising out of the performance of the Contractor's obligations hereunder, including the ownership and operation of owned, leased and non-owned motor vehicles (employee exclusion deleted) and products liability claims, (b) property damage insurance, (c) statutory worker's compensation insurance and employer's liability insurance, and (d) such other insurance at such increased levels, and/or against such other insurable risks, as the Company may from time to time reasonably require. A certificate of the respective insurer as to each such policy procured by the Contractor pursuant to this Agreement, with a copy of the policy attached, shall be provided to the Company by the Contractor promptly after obtaining each such policy. Each such insurance policy shall be in the name of the Company and the Contractor, as their interests may appear, and shall contain a statement or endorsement that such insurance shall not terminate prior to receipt by the Company of 30 days notice thereof.

Contractor and the Company recognize that the Company is regulated as a motor carrier by the United States Department of Transportation ("DOT") with respect to certain of its operations, and that ICC-regulated motor contract carriers must maintain certain levels of liability insurance coverage on a company-wide basis under 49 C.F.R. Part 1043. Accordingly, Contractor understands and agrees that the comprehensive public liability insurance referenced in subsection 5(a) above shall be provided by the insurance carrier or carriers designated by the Company from time to time.

SECTION 6.  **Indemnification**  Without limiting any other rights that the Company may have hereunder or under applicable law, the Contractor agrees to indemnify the Company harmless from any and all claims, losses, liabilities, costs and expenses of any kind whatsoever, including, without limitation, attorneys' fees (all of the foregoing being collectively referred to as "Indemnified Amounts") incurred by or asserted against the Company and arising out of, or resulting from, in whole or in part, the Contractor's performance including, without limitation, Indemnified Amounts arising out of, or resulting from, in whole or in part, the Contractor's performance of the services arising out of or relating to this Agreement, including, without limitation, Indemnified Amounts arising out of, or resulting from (i) injury or death to persons, including, without limitation, third parties, employees of the Contractor or persons driving, riding in, operating, repairing, maintaining, loading or unloading the Contractor's vehicles, equipment or other property, (ii) damage to the property of any person or legal entity, including, without limitation, loss or damage to items intended for transport which are in the Contractor's possession or under his dominion and control, and (iii) violation of any law, ordinance or regulation of any Federal, state or local governmental authority by the Contractor or its employees, subcontractors or agents. The Contractor shall pay to the Company, on demand, any and all amounts necessary to indemnify the Company from and against all such Indemnified Amounts incurred by or asserted against the Company, and the Company shall have the right to set-off any such Indemnified Amounts against any amounts owed by the Company to the Contractor under this Agreement.

SCS

SECTION 7.  **Performance Bond.**  The Contractor agrees to post a cash performance bond of $ 3500°° (the "Bond") with the Company prior to the commencement by the Contractor of any services hereunder. If the Bond is not paid in full at the commencement, then a promissory note in the amount of the Bond, plus an applicable handling fee will be issued and signed and payments will be deducted from the Contractor's settlement on a payment period stated in the promissory note. Interest shall accrue on the Bond at a rate of 3% percent per annum or the average yield of 91-day, 13-week Treasury Bills, whichever rate is higher. The Company shall remit to the Contractor interest earned on balances due to the Contractor up to the fully paid in Bond within 90-120 days of the Company's fiscal year ending in June, so long as the Agreement is in effect.

The Company shall release any amounts owing to the Contractor, less any authorized deductions, pursuant to Section 6 or otherwise not later than 45days after the termination of the Agreement.

SECTION 8.  **Compliance with Laws.**  The Contractor shall comply with all applicable laws, rules, regulations and orders and maintain and preserve its existence, rights, franchises, qualifications and privileges.



A-3

DIAKON OWNER OPERATOR AGREEMENT                                                                 3

SECTION 9. **Representations and warranties of the Contractor**  The Contractor has the full power and authority to enter into and consummate all transactions contemplated by this Agreement, has duly authorized the execution, delivery and performance of this Agreement and has duly executed and delivered this Agreement, and this Agreement constitutes a legal, valid and binding obligation of the Contractor, enforceable against it in accordance with its terms.

SECTION 10. **Amendments**.  This Agreement may be amended from time to time only by written agreement of the Company and the Contractor.

SECTION 11. **Execution in Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

SECTION 12. **Effect of Invalidity of Provisions**.  In case any one or more of the provisions contained in this Agreement should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall in no way be affected, prejudiced or disturbed thereby.

SECTION 13. **Confidential Information; Non-Solicitation**.
(a) During the term of this Agreement, the Contractor shall have access to confidential information of the Company. The Contractor shall not disclose such confidential information to any third parties or itself use such information either during the term of this Agreement or at any time thereafter except as necessary to enable the Contractor to perform its obligations hereunder.

(b) For a period of one year following the termination of this Agreement, the Contractor shall not solicit, or attempt to solicit, directly or indirectly, any of the Company's customers, contractors or employees.

(c) In the event the Contractor violates or attempts to violate any provision of this Section 13, the Contractor agrees that the Company, in addition to any other rights or remedies it may have, shall be entitled to injunctive or other equitable relief.

SECTION 14. **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to conflict of law rules.

SECTION 15. **Notices**  All notices, consents, directions and other communications required by the terms of this Agreement to be given shall be in writing, shall be deemed to have been duly given upon receipt and shall be delivered (i) by personal delivery, (ii) by first-class mail (postage prepaid, return receipt requested) or (iii) by telefax or telegraph to the parties hereto at the addresses set forth below or such other address as either party shall give in a notice to the other party pursuant to this Section:

If to the Company:

Diakon Logistics
10376 Battleview Parkway
Manassas, VA 20109
Fax (703) 530-7527


If to the Contractor:  Josue Saybe Soto
8526 Dallas St La Mesa
CA 91942 (619) 460 3910

(A-4)

DIAKON OWNER OPERATOR AGREEMENT                                                                                                  4

SECTION 16. **Assignment**   the Company may assign its rights and obligations under this Agreement upon thirty days' notice to the Contractor. The Contractor may not assign its rights or obligations under this Agreement without the express written consent of the Company.

SECTION 17. **Term; Termination**.  This Agreement shall commence on the date hereof and shall continue in effect for one year's time thereafter. However, it may be renewed for an additional one-year term by a written instrument executed by both Company and Contractor at least thirty (30) days before each anniversary date. Despite the foregoing provisions, this Agreement may be terminated by either party upon not less than 60 days' prior written notice to the other party; provided, however, that the Company may terminate this Agreement forthwith upon written notice to the Contractor upon the occurrence of any of the following events: (i) the Contractor's breach of any of its obligations under this Agreement (ii) the commencement by the Contractor as debtor of any case or proceeding under any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar law, or the Contractor's seeking the appointment of a receiver, trustee, custodian or similar official of the Contractor of any substantial part of its property; (iii) the commencement of any such case or proceeding against the Contractor, or another's seeking such appointment, or the filing against the Contractor of an application for a protective decree which (A) is consented to or not timely contested by the Contractor, (B) results in the entry of an order for relief, such an appointment, the issuance of such protective decree or the entry of an order having a similar effect, or (C) is not dismissed within sixty days; (iv) the making by the Contractor of a general assignment for the benefit of creditors, or (v) the admission in writing by the Contractor that the Contractor is unable to pay its debts as they become due or the nonpayment generally by the Contractor of its debts as they become due.

SECTION 18. **Construction**.  The headings in this Agreement are for convenience only and are not intended to influence its construction. References to Sections and Exhibits in this Agreement are to the Sections and Exhibits to this Agreement. The Exhibits are a part of this Agreement. In this Agreement, the singular includes the plural, the plural includes the singular, and the words "and" and "or" are used in the conjunctive or disjunctive as the sense and circumstances may require.

SECTION 19. **Entire Agreement**.  This Agreement and the Exhibits attached hereto contain the entire Agreement between the parties hereto with respect to the subject matter hereof, and supersede all prior and contemporaneous agreements between the parties hereto, oral or written, of any nature whatsoever with respect to the subject matter hereof.

IN WITNESS WHEREOF, the Company and the Contractor have caused this Agreement to be executed as of the date and year first above written.

CONTRACTOR                                                DIAKON LOGISTICS (DELAWARE) INC.

BY: _____                BY: _____
NAME: Josue Seybe Soto                             NAME: Jorge Gama
TITLE: O/O                                                      TITLE: Ops Manager

(A-5)

DIAKON OWNER OPERATOR AGREEMENT                                                                    5

# EXHIBIT A

## FEE SCHEDULE

1. <u>Percentage of Revenue</u>   Unless otherwise agreed to in writing between the parties, Company shall pay Contractor 62% of the adjusted gross revenue ("AGR"), which shall be distributed to Contractor on a twice per month basis. For purposes of this Exhibit, AGR shall mean all revenue received by Company from its customers for transportation services provided by Contractor under this Agreement after reduction for (1) any warehouse or storage charges received from Company's customers; (2) the amount paid to any third party by Company in relation to the particular shipment handled by Contractor, including amounts paid to other contractors as a pro rata payment for their participation in that particular movement; (3) any revenue received by Company as an excess value or insurance charge; (4) all incentives, discounts or commissions given to Company's customers or other third parties. Any increase in the AGR paid to Contractor and not memorialized in a written addendum signed by both parties shall be considered a temporary adjustment and may thereafter be reduced by Company to not less than 62% at the Company's discretion.

2. <u>Chargeback and Deduction Items</u>.   The following items shall be charged back to or deducted from Contractor's compensation or from Contractor's Bond Fund in the event that Contractor's compensation is insufficient:

    (a) Loss and damages provided in Section 6 of this Agreement, and, if applicable, Section 7 of <u>Exhibit B</u> to this agreement;
    (b) Any advances or prepayments by Company of cost or expenses to be borne by Contractor under this Agreement, including <u>Exhibit B</u> if applicable;
    (c) Any products, equipment or services which Contractor chooses to purchase from or through Company; provided, however, that it is understood that Contractor is not required to purchase any products, equipment or services from or through Company as a condition of entering into this Agreement; or
    (d) Any other expense or cost incurred by Company which is Contractor's responsibility under this Agreement or any exhibit or addendum

   Deductions and chargebacks may represent either full payment or, if set forth in a separate written agreement, installment payments for the items enumerated above. All deductions and chargebacks shall be itemized to the extent provided elsewhere in this Agreement, including <u>Exhibit B</u> if applicable.

CONTRACTOR                                                          DIAKON LOGISTICS, (DELAWARE) INC.

BY: _Josue Saybe Soto_                                              BY: _[signature]_

NAME: _Josue Saybe Soto_                                            NAME: _Jorge Gama_

DATE: _5/4/05_                                                      DATE: _5/4/05_

(A-6)

DIAKON OWNER-OPERATOR AGREEMENT

6

EXHIBIT B

SUPPLEMENT TO SERVICE AGREEMENT FOR DEPARTMENT OF TRANSPORTATION REGULATED OPERATIONS

*Preamble*

Except as otherwise stated, this Supplement shall apply only to such transportation services provided by Contractor as are within the regulatory jurisdiction of the Department of Transportation ("DOT") This Supplement, together with all provisions of the accompanying Service Agreement that are not inconsistent herewith, shall constitute the "Lease" required by the DOT for such services pursuant to 49 C.F.R. 376.11(a)

THIS SUPPLEMENTAL AGREEMENT is made as of this __4__ day of __May__, 20_05_ in the County of __San Diego__, State of __California__, between Diakon Logistics (Delaware) Inc., a Delaware Corporation, ("Company") and __Josue Saybe Soto__ ("Contractor"), as follows:

    1. <u>Lease</u>. Contractor hereby Leases to Company and Company hereby leases from Contractor the equipment, hereinafter called "Leased Equipment," described in Exhibit A hereto with driver.

    2. <u>Commencement and Duration</u>. This Exhibit B shall become effective as of the date set forth above and shall remain in effect until the date upon which the Service Agreement to which this Exhibit B is attached (the" Service Agreement") is terminated, whereupon this Exhibit B shall automatically terminate. Immediately before the first operation of any piece of Leased Equipment under this Exhibit B, Company shall furnish Contractor with an equipment receipt meeting the requirements of 49 C.F.R. 376.11(b). Contractor shall, immediately upon termination of the Agreement, remove all of Company's identification devices from the equipment and return them to Company via hand delivery or certified mail (provided that if the identification devices have been lost or stolen, a written letter certifying their removal will satisfy this requirement), together with all of the Company's other property, including paperwork and cargo to the Company's nearest terminal. If Contractor fails to return this property upon termination of this Agreement, Contractor shall pay the Company all expenses, including reasonable attorney fees, incurred by the Company in seeking the return of such items, and the Company may pursue all other remedies allowed by law or authorized in the Agreement against Contractor.

    3. <u>Payment</u>. Contractor shall receive payment for services in accordance with Exhibit A to this Service Agreement. As mandated by 49 C.F.R. 376.12(f), such payment shall be made within fifteen (15) days after Contractor submits to Company (i) logbooks required by the United States Department of Transportation and (ii) those documents necessary for Company to secure payment from its customers. Company will give Contractor, at the time of payment, a rated freight bill or other document showing equivalent information for each shipment, and a statement showing total hauling revenue and all chargeback items and deductions. Contractor shall also have the right to inspect, during regular business hours, Company's delivery manifests, tariff and other documents from which chargebacks, deductions rates and charges are computed.

    4. <u>Expenses</u>. Contractor shall pay all costs attendant to the operation and maintenance of the Leased Equipment including, without limitation, fuel costs, fuel taxes, empty mileage, all permits, tolls, ferries, detention and accessorial services, base plates, licenses, any unused portions of such items and all costs and expenses described in Section 4 of the Service Agreement. As required by 49 C.F.R. 376.12(e), Company shall assume the risks and costs of fines for overweight and oversize vehicles, when such vehicles are pre-loaded, sealed or the load is containerized, or when the trailer or lading is otherwise outside of Contractor's control, and of fines for improperly permitted overdimension and overweight loads, and shall reimburse Contractor for any such fines paid by Contractor, except when the violations occasioning such fines result from the acts or omissions of Contractor.

DIAKON OWNER-OPERATOR AGREEMENT

7

5. <u>Insurance</u>

(a)  Company shall maintain insurance coverage for the protection of the public pursuant to applicable regulations under 49 U.S.C. 13906. Contractor will carry, at its own expense, public liability and property damage insurance upon the leased Equipment used by him naming Company as an additional insured. The insurance shall be in an amount of not less than One Million Dollars ($1,000,000).

(b)  If Contractor requests to obtain coverage from Company's insurer in lieu of providing his own coverage, Company will seek to obtain and provide to Contractor a quotation for such Coverage.

6.  <u>Labor and Hold Harmless</u>. Contractor shall, at his own expense: (a) furnish whatever labor is necessary to operate the leased Equipment, including, but not limited to, loading and unloading and (b) provide (to the extent required by law) worker's compensation and employer's liability insurance with respect to persons performing such labor. Contractor shall also be responsible for the payment of wages and Social Security and withholding taxes for any of his employees. Contractor shall hold Company harmless from any liability resulting from injury or death of persons driving, riding in, operating, repairing, maintaining, loading or unloading the Leased Equipment.

7.  <u>Loss or Damage</u>. Contractor will be liable for loss or damage to items intended for transport occurring while such items are in Contractor's possession or under his dominion and control. Before making deductions from settlements with Contractor (or from the performance bond referenced in section 9 of this Exhibit B) to reflect such loss or damage, Company shall provide Contractor with a written explanation and itemization of such deductions.

8.  <u>Control and Exclusive Use</u>. Company shall have such possession, control and use of the Leased Equipment and its operation as required by 49 C.F.R. Section 376.12(c) (1). Company shall assume complete responsibility for operation of the equipment for the duration of this Agreement. Notwithstanding the foregoing, in performing services under this Exhibit B, Contractor will direct the operation of the Leased Equipment in all respects and will determine the means of performance including, but not limited to, such matters as choice of any routes, points of service of equipment, rest stops and timing and scheduling of customer deliveries. The parties intend to create an independent-contractor relationship and not an employer-employee relationship.

9.  <u>Bond</u>. During any calendar quarter in which Contractor or Company anticipates that Contractor will handle any traffic within the jurisdiction of the DOT, the provisions of this Section 9 shall supersede any inconsistent provisions of Section 7 of the Service Agreement to which this <u>Exhibit B</u> is attached. Company will hold the cash performance bond during the period the Service Agreement remains in effect and for forty-five (45) days thereafter. The bond shall be held by Company to guarantee the performance of Contractor's obligations under the agreement. The specific items for which the bond shall apply are all expenses incurred by Company that are Contractor's responsibility under the Service Agreement or any exhibit thereto, including the chargeback and deduction items set forth in <u>Exhibit A</u>. While the bond is under Carrier's control, Carrier shall provide an accounting to Contractor of all transactions involving the bond fund on a monthly reporting form, including the amount and description of any deduction from or addition to the bond fund. In addition, upon Contractor's request, Company shall provide Contractor with an accounting of any transaction involving the bond fund. Carrier shall pay interest on the bond fund on at least a quarterly basis. The amount of interest shall be established on the date the interest period begins and shall be equal to the average yield of 91-day, 13-week U.S. Treasury Bills as established in the weekly auction by the Department of the Treasury. For purposes of calculating the balance of the bond fund on which interest is paid, Company may deduct a sum equal to the average advance, if any, made to Contractor during the period of time for which interest is paid. To have any remaining balance in the bond fund returned following termination of the agreement, Contractor must first return to Company all of Company's identification devices together with any other property belonging to Company.

10.  <u>Laws</u>. Contractor shall comply with all federal, state and local laws, rules and regulations pertaining to his performance under this Exhibit B.



DIAKON OWNER-OPERATOR AGREEMENT

8

11. <u>Effect of Validity on Provision</u>   In case any one or more of the provisions contained in this Exhibit B should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall in no way be affected, prejudiced or disturbed thereby.

12. <u>Notice</u>.  Any written notice required by the terms of this Exhibit B shall be given as set forth in Section 15 of the Service Agreement.

13. <u>Complete Agreement</u>.  Except for the Service Agreement and Exhibit A, this Exhibit B contains the entire understanding between the parties and supersedes any prior agreement between the parties concerning the subject matter of the Service Agreement.  In the event of any conflict between the terms of the Service Agreement and this Exhibit B, this Exhibit B shall govern.

14. <u>Governing Law</u>.  This Exhibit B shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to conflict of laws rules.

9

DIAKON OWNER-OPERATOR AGREEMENT

EXHIBIT C

Insurance

It shall be Company's responsibility, pursuant to federal law, to provide public liability and property damage insurance for the Equipment at all times while the Equipment is being operated on behalf of COMPANY. However, Company's possession of such insurance shall in no way affect Company's rights of indemnification against CONTRACTOR as provided for in this Agreement.

CONTRACTOR shall maintain, at its sole cost and expense, the following minimum insurance coverages during the term of this Agreement:

1. **Liability Limiter.** Pursuant to Contractor's indemnification obligation to COMPANY, as set forth herein, CONTRACTOR is liable for property damage (including damage to cargo) and personal injury caused by Contractor's acts or omissions. CONTRACTOR may elect to limit liability to an amount no greater than the amounts outlined in the Insurance Checklist herein per accident for claims initially arising under Company's auto liability and/or general liability insurance by completing and signing the appropriate portion of the Insurance Checklist herein. CONTRACTOR may elect to limit liability to an amount no greater than the amounts outlined in the Insurance Checklist herein per accident for claims initially arising under Company's cargo liability insurance by completing and signing the appropriate portion of the Insurance Checklist herein. In the event CONTRACTOR elects not to limit its liability as set forth above, CONTRACTOR shall provide a Certificate of Insurance and provide an appropriately completed and signed "Transportation Contractor's Insurer's Form" evidencing insurance with deductible amounts no greater than $3,000 per occurrence for cargo liability coverage and/or deductible amounts no greater than $3,000 per occurrence for auto liability/general liability coverage from insurers acceptable to COMPANY

2. **Non-Trucking Liability.** CONTRACTOR shall procure, carry and maintain public liability and property damage insurance which shall provide coverage to CONTRACTOR whenever the Equipment is not being operated on behalf of COMPANY in a combined single limit of not less than One Million Dollars ($1,000,000) for injury or death to any person or for damages to property in any one occurrence. Such coverage shall be primary to any other insurance that may be available from COMPANY. CONTRACTOR shall be responsible for all deductible amounts and for any loss or damage in excess of the policy limit.

3. **Workers' Compensation/Occupational Accident Insurance.** CONTRACTOR shall provide workers' compensation insurance coverage for all of its employees, agents, and anyone driving the Equipment in amounts not less than the statutory limits required by applicable state law. If CONTRACTOR is the sole owner and the sole and exclusive operator of the vehicle that is driven exclusively by CONTRACTOR under this Agreement and workers' compensation coverage is not available to CONTRACTOR, then CONTRACTOR may, as an alternative to obtaining workers' compensation coverage, obtain an occupational accident insurance policy that is acceptable to COMPANY at its sole discretion

4. **Other Insurance.** In addition to the insurance coverages required under this Agreement, it is contractor's responsibility to procure, carry and maintain any fire, theft, uninsured and/or underinsured motorist and collision insurance coverage that contractor may desire for the Equipment.

CONTRACTOR shall furnish to COMPANY written certificates obtained from Contractor's insurance COMPANY showing that all insurance coverages required above have been procured and an "A" rated company, are being properly maintained, and the premiums therefore are paid, specifying the name of the insurance company, the policy number, the expiration date, naming COMPANY as an additional named insured and further showing written notice of cancellation or modification of the policy shall be given to COMPANY at least thirty (30) days prior to such cancellation or modification.

CONTRACTOR agrees to defend, indemnify and hold harmless COMPANY from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorney fees, actions, claim for injury to persons, including death, and damage to property which COMPANY may incur arising out of or in connection with Contractor's failure to maintain the insurance coverages required by this Agreement. In addition, CONTRACTOR, on behalf of its insurer,

A-10

10

DIAKON OWNER-OPERATOR AGREEMENT

expressly waives all subrogation rights against COMPANY, and, in the event of a subrogation action brought by Contractor's insurer, CONTRACTOR agrees to defend, indemnify and hold harmless COMPANY from such claim.

CONTRACTOR may, at Contractor's option, authorize COMPANY to administer, on Contractor's behalf, the insurance coverages required by this Agreement, in which case CONTRACTOR will be charged back for all of Company's expense and cost in obtaining and administering such coverage. In addition, if CONTRACTOR fails to provide proper evidence of the purchase or maintenance of the insurance required above, then COMPANY is authorized but not required to obtain such insurance at its expense and charge CONTRACTOR all costs incurred by COMPANY in obtaining and administering such coverage on Contractor's behalf. CONTRACTOR recognizes that COMPANY is not in the business of selling insurance, and any insurance coverage requested by CONTRACTOR from COMPANY is subject to all of the terms, conditions and exclusions of the actual policy issued by the insurance underwriter selected by CONTRACTOR. COMPANY shall ensure that CONTRACTOR is provided with a certificate of insurance for each insurance policy under which the CONTRACTOR selects coverage from the insurance underwriter, and COMPANY shall provide CONTRACTOR with a copy of each policy upon request by CONTRACTOR. In the event that the insurance costs or insurance provider shall change or vary after the execution of this Agreement, COMPANY shall advise CONTRACTOR of such change in writing and Contractor's failure to object or terminate the coverage being provided through COMPANY in writing to COMPANY shall constitute an express consent and authorization to COMPANY to deduct and charge back to CONTRACTOR the revised amount.

THIS EXHIBIT is agreed to by the undersigned parties as of the latest date set forth below.

CONTRACTOR
BY: _____
NAME: Josue Saybe Soto
DATE: 5/4/05

DIAKON LOGISTICS (DELAWARE) INC.
BY: _____
NAME: Jorge Galma
DATE: 5/4/05

(A-11)

DIAKON O- OWNER OPERATOR AGREEMENT                                                                                   11

## Insurance Checklist

If COMPANY is able to obtain it, CONTRACTOR hereby requests COMPANY, through Company's insurer, to obtain on Contractor's behalf the insurance coverages selected by CONTRACTOR below:

| | TYPE OF COVERAGES | INITIAL (TO REQUEST COVERAGE) N/A (TO DECLINE COVERAGE) |
|---|---|---|

1) Occupational Accident Insurance (in states where workers' Compensation coverage is not available to CONTRACTOR)

   Current Cost:   $ 205  per month (owner operator)      x S-SS
                   $ 92   per month (helper coverage)     x S-SS
                   $ 0    per month (2nd driver)          SS

2) Truck Physical Damage (subject to $3,000 liability limiter)
   Stolen Truck if keys were left in truck limitation no greater than $5,000
   Current Cost:   $ 64.43 per month                      x S-SS

| | LIABILITY LIMITATION | INITIAL (TO ELECT LIMITATION) N/A (TO DECLINE LIMITATION) |
|---|---|---|

1) Auto Liability
   Limitation of no greater than $3,000 per occurrence, excluding below
   Property Damage resulting from Handling of Property (Loading & Unloading) limitation no greater than $3,000 per occurrence
   Backing Accident limitation no greater than $5,000 per occurrence
   Rear End Accident limitation no greater than $5,000 per occurrence
                                                          x S-SS

2) General Liability
   Limitation of no greater than $3,000 per occurrence, excluding below
   Water Damage limitation no greater than $5,000 per occurrence
                                                          x S-SS

3) Cargo Liability
   Limitation of no greater than $3,000 per occurrence, excluding below
   Stolen Truck if keys were left in truck limitation no greater than $5,000
                                                          x S-SS

CONTRACTOR                                    DIAKON LOGISTICS (DELAWARE) INC.
BY: _Josue Sayle Soto_                        BY: _[signature]_
NAME: _Josue Suybe Soto_                      NAME: _Jorge Garcia_
DATE: _05/04/05_                              DATE: _05/04/05_

(A-12)

## Owner Operator Authorization to Deduct from Settlement

In accordance with my Service Agreement, I understand that I must carry specific insurance. I also understand that I am free to purchase those insurance programs from any provider, but I choose to participate in the programs offered through Marsh USA, Inc. for the owner operators of Diakon Logistics (Delaware) Inc. ("Diakon"). I hereby authorize Diakon to deduct payments from my settlements for this insurance beginning _____May 4_____, 20_05_ and continuing until canceled

Date: _5/4/05_

Owner Operator: _[signature]_

Witness: _[signature]_

In accordance with my Service Agreement, I understand that I must carry insurance to protect myself, and any of my employees, in the event of a job-related injury. I also understand that I am free to purchase this insurance program from any provider, but I choose to participate in the program offered through Marsh USA Inc. for the owner operators of Diakon Logistics (Delaware) Inc. ("Diakon"). I hereby authorize Diakon to deduct payments from my settlements for this insurance beginning _____May 4_____, 20_05_ and continuing until canceled.

Date: _5/4/05_

Owner Operator: _[signature]_

Witness: _[signature]_

9/04

(A-13)

## Authorization to Deduct from Settlement for Truck Rental

I  Josue Saybe Soto  (print name) here by authorize Diakon Logistics (Delaware) Inc. to deduct from my settlement any truck rental bills that I incur during my contract with Diakon Logistics (Delaware) Inc  I understand that Diakon Logistics (Delaware) Inc. will also pre-deduct a minimum of $400.00 (four hundred dollars) per week in rental truck charges in the event that the rental company is delayed in sending their invoices to Diakon Logistics (Delaware) Inc

X _____    05/04/05
(Owner Operator signature)                (Date)

_____    65/04/02
(Operation Manager signature)              (Date)

(A-14)

## Authorization to Deduct from Settlement

| | Date | O/O Name | Diakon Manager Signature | O/O Signature |
|---|---|---|---|---|
| PHONES EQUIPMENT | | | | |
| PHONE BILLS | | | | |
| TRUCK LEASE | | | | |
| TRUCK RENTALS | | | | |
| TRUCK FUEL | | | | |
| UNIFORMS HATS/PANTS/SHIRTS | | | | |
| EQUIPMENT Tools/Pads/Ties Etc. | | | | |
| Temp. Labour Companys | | | | |
| Hotel bills | | | | |

I _Josue Saybe Soto_ Give Diakon Logistics (Delaware) Inc. the Authorization To deduct the above Bill's from my Settlements.

O/O Signature _[signature]_   Diakon Manager Signature _[signature]_

Date _5/4/05_

A-15

## DIAKON LOGISTICS (DELAWARE) INC.
## PROMISSORY NOTE

On or before 5-4-2006 for value received, JOSUE SAYBE SOTO ("Borrower") promises to pay in lawful money of the United States, to the order of Diakon Logistics (Delaware) Inc. doing business at SAN DIEGO CA _____ the principal sum of THREE THOUSAND FIVE HUNDRED ($ 3,500 ), plus a handling fee of $ 0 . In the event of commencement of suit to enforce payment of this note, Borrower agrees to pay such additional sums as attorney's fees, as the court may judge reasonable. In the event of termination of Borrower's contract with Diakon Logistics (Delaware) Inc., the balance of the note is due in full.

Principal $ 3,500     Handling Fee $ 0     (6% of principal) Total $ 3500

Date 5-4-2005     Borrower's Name: JOSUE SAYBE SOTO

Authorized Signature: [signature]

Title: O/O

Witness: [signature]

Proceeds of Loan used for: PERFORMANCE BOND

If insurance claim: Date of Occurrence _____     Claim No. _____
                                                   Charge to Acct _____

Borrower hereby authorizes Diakon Logistics (Delaware) Inc. to deduct from Borrower's settlement the amount of TWO HUNDRED FIFTY ($ 250.00 ) per weekly / biweekly (circle one) settlement and apply said amount to the loan above, beginning 5-4-05 and continuing thereafter until the loan and handling fee are paid in full.

Borrower's Name: JOSUE SAYBE SOTO

Authorized Signature: [signature]     Date: 5-4-05

Witness: [signature]     Date: 5-4-05

Type
☒ Performance Bond
☐ Loan / Advance
☐ Insurance Claim

PromNote-Delaware     Rev 01/05

(A-16)