Derek J. Emge (CSB No. 161105)
EMGE & ASSOCIATES
550 West C Street, Ste. 1600
San Diego, CA 92101
Telephone (619) 595-1400
Facsimile  (619) 595-1480

Issa J. Michael (CSB No. 184256)
THE MICHAEL LAW FIRM
1648 Union St #201
San Francisco, CA 94123
Telephone (415) 447-2833
Facsimile (415) 447-2834

Attorneys for Plaintiffs, JOSUE SOTO, GHAZI RASHID, MOHAMED ABDELFATTAH, On
Behalf of All Aggrieved Employees, All Others Similarly Situated, and the General Public
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE SOTO, GHAZI RAHID, MOHAMED ABDELFATTAH, On Behalf of All Aggrieved Employees, All Others Similarly Situated, and the General Public, | Case No.  08-CV-0033 L (AJB) |
| | **CLASS ACTION** |
| Plaintiffs and Counterclaim Defendants, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DIMSISS FIRST AMENDED THIRD PARTY COMPLAINT AGAINST SAYBE'S LLC, ABDUL TRUCKING, INC., AND RASHID TRUCKING, INC. PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| vs. | |
| DIAKON LOGISTICS (DELAWARE), INC., a foreign corporation; | |
| Defendant and Counterclaimant, | Date:   August 11, 2008 |
| and | Time:  10:30 a.m. |
| DOES 1 through 50, inclusive, | Judge: Hon. M. James Lorenz |
| Defendants. | Dpt:    14 |
| DIAKON LOGISTICS (DELAWARE) INC., | Original Complaint Filed: 12/5/2007 |
| Third-Party Plaintiff, | |
| vs. | |
| SATBE'S, LLC, ABDUL TRUCKING, INC., and RASHID TRUCKING, INC. | |
| Third-Party Defendants. | |

– 1 –

**PRELIMINARY STATEMENT**

Plaintiffs JOSUE SOTO ("SOTO"), GHAZI RASHID ("RASHID") and MOHAMED ABDELFATTAH ("ABDELFATTAH") (collectively "Plaintiffs") brought this action against their alleged employer to remedy a misclassification of their employment status and recoup wages, unreimbursed business expenses and penalties.    Rather than address the issue at hand – misclassification – Defendant DIAKON LOGISTICS (DELAWARE), INC. ("Defendant") is attempting, through a tortured interpretation of a general indemnification agreement, to scare Plaintiffs into dropping their claim.  The indemnification clause relied upon by Defendant was drafted to cover third party claims rather than employment-related claims by Plaintiffs against their alleged employer.  Defendant's attempted interpretation of the indemnification clause would have Plaintiffs paying the cost of Defendant's defense as well as any settlement or judgment even if Plaintiffs are the prevailing party in the present employment action!  Such an interpretation defies logic and runs counter to established authority.    As such, Defendant's Amended Third-Party Complaint cannot, as a matter of law, result in a verdict in Defendant's favor.

**BACKGROUND FACTS**

As alleged specifically in Plaintiffs' First Amended Complaint [Doc. No. 28] filed April 18, 2008, Plaintiffs were drivers of delivery trucks for Defendant.  Defendant holds itself out as a national leader in the home delivery industry.[1]  Defendant contracts with large retailers, including furniture and home appliance stores, to provide trucks and drivers to complete the retailers' home deliveries.[2]

On or about May 4, 2005, SOTO was hired as a delivery driver for Defendant.[3]  He signed a Service Agreement in which he was labeled an independent contractor of Defendant.[4]  He renewed his Service Agreement in November 2005 [Doc. No. 43-1] and again in November 2006

---

[1] Defendant's Answer to First Amended Complaint, [Doc. No. 35], ¶19.
[2] Plaintiffs' First Amended Complaint [Doc. No. 28], ¶8.
[3] Id.,¶9.
[4] Doc. No. 43-2.

– 2 –

[Doc. No. 43-2] under the name of SAYBE'S LLC ("SAYBE'S"). SOTO is the sole member of SAYBE'S.[5]  On or about October 13, 2004, ABEDLFATTAH entered into a Service Agreement with Defendant using the name ABDUL TRUCKING, INC.[6]  On or about July 15, 2005, RASHID entered into a Service Agreement with Defendant using the name RASHID TRUCKING, INC.[7] (Third-party defendants, SAYBE'S, ABDUL TRUCKING, INC. and RASHID TRUCKING, INC. are collectively referred to herein as "THIRD PARTY DEFENDANTS"). Despite the categorization of THIRD PARTY DEFENDANTS under the Service Agreements as independent contractors, Plaintiffs were under constant and complete control by Defendant in all aspects of their delivery duties. For example, they were not allowed to make personal deliveries or deliveries for other companies,[8] all delivery schedules were arranged by Defendant,[9] and all work duties were controlled by Defendant.[10]  In short, Plaintiffs were misclassified employees rather than independent contractors.

Throughout the course of their employment, Plaintiffs were paid rates that fell below the State's minimum wage law.[11]  They were not provided with proper meal periods.[12]  They were not provided with state mandated rest periods.[13]  Further, Defendant failed to reimburse Plaintiffs for business expenses, including deposits for use of the delivery trucks, fuel and maintenance for the trucks, cell-phone charges, the cost of insurance, and damages to Defendant's trucks and its client's merchandise.[14]

## PROCEDURAL HISTORY

On December 5, 2007, SOTO filed a complaint against Defendant in Superior Court on behalf of himself and all of Defendant's delivery drivers between December 5, 2003 and the

---

[5] Doc. No. 43-2.
[6] Doc. No. 43-4
[7] Doc. No. 43-7
[8] Doc No. 28, ¶ 21.
[9] Id..
[10] Id., ¶24.
[11] Id., ¶¶39-41.
[12] Id., ¶¶42-45.
[13] Id., ¶¶46-48.
[14] Id., ¶¶49-52.

– 3 –

present, alleging misclassification of employment status and wrongful denial of minimum wages, meal breaks, rest periods and expense reimbursements. SOTO also sued under the California Labor Code Private Attorney General Act of 2004 for civil penalties.

On January 4, 2008, Defendant removed SOTO'S case to Federal Court [Doc. No. 1]. Meanwhile, on December 21, 2007, RASHID AND ABDELFATTAH filed a similar class action complaint in San Francisco Superior Court. These Co-Plaintiffs' case was also removed to Federal Court. Thereafter, Plaintiffs collectively filed a First Amended Complaint [Doc. No. 28], which Defendant Answered while also bringing a Counterclaim against SOTO [Doc. No. 35]. SOTO filed a Motion to Dismiss the Amended Counterclaim [Doc. No. 41] which is currently pending before this Court.

On June 6, 2008, Defendant filed a First Amended Third Party Complaint [Doc. No. 43], which by this motion, THIRD PARTY DEFENDANTS seek to dismiss. Defendant's third party complaint contains a single cause of action for indemnity. THIRD PARTY DEFENDANTS collectively move the Court for an order dismissing the First Amended Third-Party Complaint [Doc. No. 43] on the grounds that Defendant has failed to state a cause of action upon which relief can be granted.

## ARGUMENT

## 1. LEGAL STANDARD FOR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss as a test of the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim or complaint under this Rule should be granted where "it appears beyond doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 335 U.S. 41, 45-46 (1957). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

– 4 –

**2.    DEFENDANT'S FIRST AMENDED THIRD PARTY COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR INDMENITY UPON WHICH RELIEF CAN BE GRANTED**

Defendant's First Amended Third-Party Complaint contains a single cause of action entitled "INDEMNITY."  The claim for indemnity is based solely on the Service Agreements, which contain the following identical provision:[15]

> SECTION 6.  **INDEMNIFICATION.**  Without limiting any other rights that the Company may have hereunder or under applicable law, the Contractor agrees to indemnify the Company harmless from any and all claims, losses, liabilities, costs and expenses of any kind whatsoever, including, without limitation, attorneys' fees (all of the foregoing being collectively referred to as "Indemnified Amounts") incurred by or asserted against the Company and **arising out of, or resulting from, in whole or in part, the Contractor's performance** including, without limitation, Indemnified Amounts arising out of, or resulting from, in whole or in part, the Contractor's performance of the services arising out of or relating to this Agreement, including, without limitation, Indemnified Amounts arising out of, or resulting from **(i) injury or death to persons**, including, without limitation, third parties, employees of the Contractor or persons driving, riding in, operating, repairing, maintaining, loading or unloading the Contractor's vehicles, equipment or other property, **(ii) damage to the property of any person** or legal entity, including, without limitation, loss or damage to items intended fro transport which are in the Contractor's possession or under his dominion and control, and **(iii) violation of any law, ordinance or regulation** of any Federal, state or local governmental authority by the Contractor or its employees, subcontractors or agents.  The Contractor shall pay to the Company, on demand, any and all amounts necessary to indemnify the Company from and against all such Indemnified Amounts incurred by or asserted against the Company, and the Company shall have the right to set-off any such Indemnified Amounts against any amounts owed by the Company to the contractor under this Agreement. [Emphasis added].

---

[15] The entirety of the indemnification agreement is included herein for a full understanding of the intent of the parties.  Although not cited in full in the amended third party complaint, the agreements were included as an Exhibits "A-D and F" to Doc. No. 43.

– 5 –

1

2

3    **A.    The Indemnification Agreement is Inapplicable to Plaintiffs' Case**

4    Defendant relies solely on the indemnification agreement as the basis for recovery in its

5    First Amended Third Party Complaint. However, by the very language of the agreement, it is

6    applicable only to "claims, losses, liabilities, costs and expenses … arising out of, or resulting

7    from, in whole or in part, the Contractor's performance."  The present action is limited to claims

8    that arise out of *Defendant's* own conduct, not the conduct of THIRD PARTY DEFENDANTS.

9    All claims contained in the First Amended Complaint are brought pursuant to the California Labor

10   Code and are tort claims focusing on the conduct of Defendant.  *Nally v. Grace Cmth. Church*

11   (1988) 47 Cal.3d 278, 292.  Thus, the indemnification agreement is not triggered by Plaintiffs'

12   filing of the present action.

13   **B.    Even if the Indemnification Agreement Were Triggered, It Would Not Apply**
     **to the Present Situation**

14

15   The indemnification agreement at issue discusses three scenarios wherein indemnification

16   might arise, and all three contemplate a situation where the Company (Third Party Defendants) is

17   sued <u>by a third party</u> for an act or conduct of the Contractor (PLAINTIFFS).  Section 6 does not,

18   however, discuss the allocation of attorneys' fees in a situation where the indemnitor

19   (PLAINTIFFS) brings an action against the indemnitee (Defendant) for the conduct of Defendant.

20   Nor does Defendant cite to or allege any other agreement or provision of the Service Agreement

21   that would provide indemnification rights specific to a shifting of attorneys' fees in an indemnitor

22   vs. indemnitee lawsuit.  Nevertheless, Defendant would like this Court to apply greater meaning to

23   the language of the Service Agreements than that which was written so that it might include

24   indemnification of the indemnitee in situations where they are sued for statutory, regulatory and

25   common law employment rights by the indemnitor.  THIRD PARTY DEFENDANTS dispute that

26   this was the intent of the contracting parties at the time the Service Agreements were entered into.

27

28

Contract interpretation is a question of law. *Badie v. Bank of America,* 67 Cal.App.4[th] 779, 798 (1998). It is well accepted that the goal of contract interpretation is to give effect to the parties' mutual intent. Cal. Civ. Code § 1636; *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1264 (1992). "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." *Winet v. Price,* 4 Cal.App.4[th] 1159, 1166 (1992). The Court must therefore ascertain the intent of the parties by considering the contract as a whole, keeping in mind the rule "however broad may be terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." *Badie v. Bank of America,* 67 Cal.App.4[th] at 800. Additionally, the Court is guided by the principle that contract interpretation must make the agreement "definite, reasonable, and capable of being carried into effect" while "avoiding an interpretation that would make it harsh, unjust or inequitable." *Id.*

Here, Defendant's purported interpretation of the indemnification agreement extends well beyond that which was intended and what was, in fact, written. There is no discussion of indemnification for situations where the indemnitee sues the indemnitor for damages arising from the conduct of the indemnitor. On the contrary, each enumerated example: injury or death (example "i"), damage to property (example "ii"), and violation of law (example "iii") contemplates a third-party suing Defendant for the acts of Plaintiffs. It does not contemplate the situation of Plaintiffs suing Defendant for employment misclassification under California law.

The listing of the three specific instances where indemnification would apply gives meaning to the initial general language of "all claims, losses, liabilities, costs and expenses of any kind." The maxim *ejusdem generis* is applicable in this situation.[16] As explained by the California Supreme Court in *People v. Giordano,* 42 Cal.4[th] 644 (2007), "ejusdem generis applies whether specific words follow general words in a statute or vice versa. In either event, *the general term or category is restricted to those things that are similar to those which are enumerated specifically.* Although the phrase 'including, but no limited to' is a phrase of enlargement, the use of this phrase

---

[16] The doctrine of *ejusdem generis* may be used to assist in the interpretation of contractual language. *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi)* 368 F.3d 491, 499-500 fn. 8 (5th Cir. 2004); *C. Sanchez & Son, Inc. v. United States* 6 F.3d 1539, 1544 (Fed. Cir. 1993).

– 7 –

does not conclusively demonstrate that the [drafter] intended a category to be without limits." *Id.* at 660 [emphasis added]; *See also, Circuit City Stores, Inc. v. Saint Clair Adams,* 532 U.S. 105, 114-115 (2001) ["Under this rule of construction the residual clause should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it".]

Defendant's tortured interpretation of the indemnity agreement also runs counter to the "American Rule" of attorneys' fees where a party prevailing in a lawsuit is not entitled to recover fees from the loser. *Alyeska Pipeline Service Co. v. Wilderness Society* 421 U.S. 240, 247 (1975) [*Superseded by statute on other grounds as stated in Perez v. Rodriguez Bou* 575 F.2d 21, 24 (1st Cir. 1978) – In the Civil Rights Attorney's Fees Award Act of 1976 Congress established an exception to the "American Rule" for private actions brought under 42 U.S.C. § 1983 and other specified measures designed to secure civil rights.]

In fact, if the indemnity clause is interpreted as Defendant's propose, Plaintiffs would be required to pay Defendant's judgment and attorney's fees even if Plaintiffs prevail in establishing that Defendant violated California's labor laws!  Such an interpretation would be "harsh, unjust and inequitable," not to mention absurd. *Winet v. Price,* 4 Cal.App.4[th] 1159, 1166 (1992).

Defendant's attempt to apply on overbroad reading of an indemnification agreement is not unique.  A similar attempt to expand an indemnity agreement to cover attorneys' fees and costs in a suit by an indemnitee against an indemnitor occurred in *Layman v. Brownell Combs, II* 994 F.2d 1344 (9th Cir. 1992).  There, the Court found that the identical purported interpretation created an "absurdity" that "undermines the reasonableness of the defendants' interpretation of the indemnification." *Id.* at 1352.  If the parties intend to deviate from the American rule on the payment of attorneys' fees, "[i]t is not too much to ask that a clause effectuating such a deviation from the norm be explicit. *Id.*

The California Supreme Court has similarly dismissed the notion that a general indemnification agreement extends to lawsuits by the indemnitor against the indemnitee arising out of the conduct of the indemnitee.  For example, in *Price v. Shell Oil Co.*, 2 Cal. 3d 245 (1970), the

– 8 –

Court was faced with a situation where a lessee of a tank truck sued the manufacturer of the truck for injuries and the manufacturer countersued for indemnification under the agreement contained in the lease.  The indemnification agreement, like the one presented in the present case, sought indemnity "against <u>any and all claims and liability</u> for injury or death of persons or damage to property caused by or happening in connection with the equipment…"  *Id.* at 256 [emphasis added].  In refusing to construe the indemnity agreement as Defendant proposed, the Court summarized the rules governing express contracts for indemnity as follows:

> An indemnity clause phrased in general terms will not be interpreted, however, to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts…Although the cases have held that one may provide by agreement for indemnification against his own negligence, the agreement for indemnification must be clear and explicit; the agreement must be strictly construed against the indemnitee." *Id.* at 257.

The Court in *Price v. Shell* recognized that that the indemnity clause at issue contained no language that "expressly and unequivocally" required the lessee to indemnify the manufacturer for liability caused by the manufacturer's own acts.  *Id.* at 258.  The identical situation exists in the present case.  The indemnification agreements between Plaintiffs and Defendant are general in nature, pertains by direct reference to claims from third parties, and fail to contain any language addressing the situation where Plaintiffs make employment law claims against Defendant for Defendant's illegal conduct.

Other federal courts have applied the same logic in denying the expansion of indemnification clauses, holding that there is no right to indemnification of claims between an indemnitor and indemnitee unless the contract <u>expressly</u> contemplates such an entitlement.  *See, Petit v. BASF Corp.,* 2001 Mass. Super. LEXIS 124 (2001); *Astrolabe Inc., v. Esoteric Technologies Pty, Ltd.,* 2002 U.S. Dist. LEXIS 5764 (D. Mass. 2002); *Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Assocs.,* 137 Fed. Appx. 464 (3rd Cir. 2005).

Even accepting as true all of Defendant's allegations contained in their Amended Third-Party Complaint for the limited purpose of this motion to dismiss, Defendant has failed to state a claim upon which relief can be granted.  As a matter of law, the indemnification agreements at

– 9 –

issue cannot be read to cover or include indemnification of Defendant by Plaintiffs/THIRD PARTY DEFENDANTS for fees and costs incurred in defending Plaintiffs' employment law claims that Defendant's own conduct, whether negligent or intentional, resulted in injury to Plaintiffs and the class of misclassified employees they seek to represent.

### CONCLUSION

Based upon the foregoing argument and citation to authority, THIRD PARTY DEFENDANTS submit that Defendant's claims for indemnity must fail as a matter of law and therefore respectfully request that this Court grant this Motion to Dismiss the First Amended Third-Party Complaint.

DATED: June 13, 2008                    ISSA J. MICHAEL

                                        s/Issa J. Michael

                                        THE MICHAEL LAW FIRM
                                        1648 Union St #201
                                        San Francisco, CA 94123

                                        EMGE & ASSOCIATES
                                        DEREK J. EMGE
                                        550 West "C" Street, Suite 1600
                                        San Diego, CA  92101

                                        LAW OFFICE OF TODD J. HILTS
                                        Todd J. Hilts
                                        2214 2nd Ave
                                        San Diego, CA 92101

                                        LAW OFFICES OF DAVID A. HUCH
                                        David A. Huch
                                        7040 Avenida Encinas, Suite 104
                                        Carlsbad, CA 92011

                                        Attorneys for Plaintiffs, JOSUE SOTO,
                                        GHAZI RAHID, MOHAMED
                                        ABDELFATTAH and Third Party Defendants
                                        SAYBE'S LLC, ABDUL TRUCKING, INC.
                                        and RASHID TRUCKING, INC.

–10–