SCOPELITIS, GARVIN, LIGHT,
  HANSON & FEARY, P.C.
James H. Hanson, *Pro Hac Vice,* Ind. Bar No. 08100-49
jhanson@scopelitis.com
Robert L. Browning, *Pro Hac Vice,* Ind. Bar No. 15128-49
rbrowning@scopelitis.com
R. Jay Taylor Jr., *Pro Hac Vice,* Ind. Bar No. 19693-53
jtaylor@scopelitis.com
10 West Market Street, Suite 1500
Indianapolis, IN 46204
(317) 637-1777
Fax:  (317) 687-2414

Christopher C. McNatt, Jr., Cal. Bar No. 174559
SCOPELITIS, GARVIN, LIGHT,
HANSON & FEARY, LLP
2 North Lake Avenue, Suite 460
Pasadena, CA 91101
(626) 795-4700
Fax:  (626) 795-4790
cmcnatt@scopelitis.com

Attorneys for Defendant/Counterclaimant/Third-Party Defendant

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE SOTO, GHAZI RASHID, and MOHAMED ABDEL-FATTAH, Individually, on Behalf of All Aggrieved Employees, All Others Similarly Situated, and the General Public, <br><br> Plaintiffs/Counterdefendant, <br><br> vs. <br><br> DIAKON LOGISTICS (DELAWARE) INC., a foreign corporation; <br><br> Defendant/Counterclaimant <br><br> And <br><br> DOES 1 through 50, inclusive, <br> Defendants. | **CASE NO. 08-CV-0033-L-AJB** <br><br> **CLASS ACTION** <br><br> **OPPOSITION OF DIAKON LOGISTICS (DELAWARE) INC. TO THE MOTIONS TO DISMISS THE COUNTERCLAIM AS TO JOSUE SOTO AND THE THIRD-PARTY COMPLAINT AS TO SAYBE'S, LLC, ABDUL TRUCKING, INC., AND RASHID TRUCKING, INC.** |
| DIAKON LOGISTICS (DELAWARE) INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> SAYBE'S, LLC, ABDUL TRUCKING, INC., and RASHID TRUCKING, INC., <br><br> Third-Party Defendants. | |

Defendant/Counterclaimant/Third-Party Defendant, Diakon Logistics (Delaware) Inc. ("Diakon), respectfully submits the following opposition to the motions of Plaintiff/Counterclaim Defendant, Josue Soto ("Soto"), and Third-Party Defendants, Saybe's, LLC ("Saybe's"), Abdul Trucking, Inc. ("Abdul Trucking"), and Rashid Trucking, Inc. ("Rashid Trucking") (collectively, "Third-Party Defendants") to dismiss the Counterclaim as to Soto and the Third-Party Complaint as to Third-Party Defendants.

## I.   __INTRODUCTION__

Soto and Third-Party Defendants collectively assert that Diakon's counterclaim for indemnity against Soto (the "Counterclaim") and its third-party complaint for indemnity against Third-Party Defendants (the "Third-Party Complaint") must be dismissed because indemnity is only available under their respective Service Agreements ("SAs") for claims against Diakon by third-parties relating to their conduct of Soto and not for amounts relating to claims by them against Diakon regarding the purportedly wrongful acts of Diakon itself.  Soto and Third-Party Defendants are wrong.

First, Diakon has asserted the very kind of indemnity claims Soto and Third-Party Defendants say are acceptable.  Specifically, the Third-Party Complaint seeks indemnity from Third-Party Defendants for claims against Diakon by third-parties: Plaintiffs Soto, Rashid, and Abdel-Fattah are third-parties in relation to the SA's between Diakon and Third-Party Defendants.  Each of them has sued Diakon, claiming they were Diakon's employees, but were improperly misclassified as independent contractors.  They each claim to be entitled to various benefits and protections available to employees under California law.  These claims fall squarely within the Third-Party Defendants' SAs' broad indemnity provisions. And Virginia law, which governs the interpretation of the SAs, permits parties to a contract to agree in advance that one party will indemnify another party for losses arising from the potential indemnitee's own fault, recognizing that such indemnity does not impact an injured third-party's right to recover.  The issue is therefore not whether Plaintiffs' rights under the California Labor Code can be avoided or waived.  The issue is whether Third-Party Defendants' agreement to indemnify Diakon for these kinds of claims will be enforced.

Second, while Soto and Third-Party Defendants say they should not have to indemnify Diakon if they prevail, their argument for dismissal ignores the fact that they must indemnify Diakon for its costs in the event they lose.  Diakon denies all of Plaintiffs' material allegations. In particular, Diakon alleges that Plaintiffs were employed by Third-Party Defendants, and not by Diakon.  To the extent Plaintiffs' employer failed to comply with applicable California laws, their claims implicate Third-Party Defendants, Plaintiffs' real employers, and not Diakon. Diakon seeks indemnity from Soto under the Counterclaim and from Third-Party Defendants under the Third-Party Complaint for the costs it has incurred and will continue to incur to defend against Plaintiffs' baseless allegations.

While Soto and Third-Party Defendants may disagree with Diakon's position on the merits of Plaintiffs' underlying claims, their disagreement is irrelevant because Diakon's allegations must be taken as true here.  Therefore, assuming, as the Court must, that Diakon will prevail, Diakon's Counterclaim and Third-Party Complaint for indemnity should not be dismissed because Plaintiffs' claims fall squarely within the applicable indemnity provisions regardless of Plaintiffs' premature allegations of Diakon's wrongdoing.

## II.  BACKGROUND

### A.  Diakon's California Operations

Diakon is a federally regulated interstate motor carrier that provides logistics and home delivery services to various large retailers in California, including Sears, Jerome's Furniture, and Ethan Allen.  To facilitate the home delivery component of its services, Diakon utilizes the services of individual and corporate transportation service providers (referred to herein as "Contractors") that enter into SAs with Diakon.  In particular, Soto (for a short period of time) and Third-Party Defendants agreed to provide Diakon with transportation services pursuant to their SAs.

### B.  Third-Party Defendants, Plaintiffs, And  Plaintiffs' Claims

Third-Party Defendants are business entities owned and operated by Plaintiffs.  *See Third-Party Complaint*, ¶¶ 2-4.  Soto organized Saybe's, a California limited liability company, on May 31, 2005.  Rashid incorporated Rashid Trucking, a California corporation (No.

C2755777), on July 8, 2005.  And Abdelfattah incorporated Abdul Trucking, Inc., a California corporation (No. C2675803), on September 24, 2004.  All three of Plaintiffs' businesses were validly formed, organized under the laws of California, and remain ongoing concerns to this day.[1]  Although Diakon contracted briefly with Soto from May 4, 2005 to November 2, 2005, Diakon otherwise had no relationship with Plaintiffs and contracted exclusively with Plaintiffs' businesses.  In particular, Saybe's entered into a SAs with Diakon on November 2, 2005 and on November 2, 2006.  Rashid Trucking entered into SAs with Diakon on July 15, 2005, and May 26, 2006.  And Abdul Trucking entered into SAs with Diakon on October 9, 2005, July 31, 2006, and October 13, 2006.[2]

Third-Party Defendants employed Plaintiffs to perform the transportation work contemplated by Third-Party Defendants' SAs.  *See Third-Party Complaint*, 9, 11, 13.  Plaintiffs have sued Diakon, claiming they were Diakon's employees and were improperly classified as independent contractors.  They seek (1) unpaid minimum wages, (2) damages for missed meal and rest breaks, (3) reimbursement of the operational expenses Soto or the contracting entities agreed to pay under their SAs, (4) statutory penalties for improperly itemized wage statements, (5) restitution under the California Unfair Competition Law (the "UCL"), and (6) statutory penalties and fees under the California Private Attorney General Act ("PAGA").

C.   **Diakon's Indemnity Claims**

In their SAs, Soto and Third-Party Defendants agreed to indemnify Diakon for all claims of any kind arising out of their performance under the SAs as follows:

> **SECTION 6.  Indemnification.**   Without limiting any other rights that the Company [Diakon] may have hereunder or under applicable law, the Contractor

---

[1] Diakon attached documentation maintained by the California Secretary of State showing the names and formation dates of Plaintiffs' respective business entities as Exhibit B to Diakon's Memorandum of Points and Authorities in Support of its Motion to Dismiss the claims asserted by Plaintiffs, Josue Soto ("Soto"), Ghazi Rashid ("Rashid"), and Mohamed Abdelfattah ("Abdelfattah") (Dkt. no. 36).

[2] The SAs of Soto and Third-Party Defendants were attached as exhibits to the Counterclaim and Third-Party Complaint.  Because they are substantially similar in all respects material here, Diakon refers to them collectively as "the SAs."

[Soto or Saybe's] agrees to indemnify [Diakon] harmless from any and all claims, losses, liabilities, costs and expenses of any kind whatsoever, including, without limitation, attorneys' fees (all of the foregoing being collectively referred to as "Indemnified Amounts") incurred by or asserted against [Diakon]] and arising out of, or resulting from, in whole or in part, the Contractor's performance including, including, without limitation, Indemnified Amounts arising out of, or resulting from, in whole or in part, the Contractor's performance of the services arising out of or relating to this Agreement, including, without limitation, Indemnified Amounts arising out of, or resulting from (i) injury or death to persons, including, without limitation, third parties, employees of the Contractor or persons driving, riding in, operating, repairing, maintaining, loading or unloading the Contractor's vehicles, equipment or other property, (ii) damage to the property of any person or legal entity, including, without limitation, loss or damage to items intended for transport which are in the Contractor's possession or under his dominion and control, and (iii) violation of any law, ordinance or regulation of any Federal, state or local governmental authority by the Contractor or its employees, subcontractors or agents.  The Contractor shall pay to the Company, on demand, any and all amounts necessary to indemnify the Company from and against all such Indemnified Amounts incurred by or asserted against the Company, and the Company shall have the right to set-off any such Indemnified Amounts against any amounts owed by the Company to the Contractor under this Agreement.

*See SAs* §§ 6.  In its Counterclaim and its Third-Party Complaint, Diakon alleges that Soto and Third-Party Defendants must indemnify Diakon for all costs, expenses, and potential judgments in connection with Plaintiffs' underlying action.  Diakon also seeks indemnity from both Soto and Third-Party Defendants for the attorneys fees and costs it incurs in this matter in the event Diakon prevails.

## III.   ARGUMENT

### A.   A Plausible Right To Recover Precludes Dismissal

In considering the Motions to dismiss, the Court must accept all of Diakon's allegations as true and construe them in the light most favorable to Diakon.  *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th Cir. 2007).  As the U.S. Supreme Court recently noted in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1969 (2007), "a claim does not need detailed factual allegations to survive a motion to dismiss" so long as the factual allegations are "sufficient, when taken as true, to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, even if doubtful in fact."  A complaint may not be dismissed for failure to state a claim where the allegations set forth a "plausible entitlement to relief."  *Id.* at 1967.

While Soto and Third-Party Defendants may believe Plaintiffs will prevail on the merits at some point in this case, their claims that Diakon has violated California law are premature and

1    immaterial to a ruling on their Motions to Dismiss.  As the 9th Circuit Court of Appeals has

2    stated, the issue in a Rule 12(b)(6) motion "is not whether a [party's] success on the merits is

3    likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to

4    establish his claims."  *De La Cruz*, 582 F.2d at 48.  This is why the Court must accept all of

5    Diakon's factual allegations as true.

6    **B.    Virginia Law Governs Interpretation Of The SAs**

7            The SAs each provide that they will be "governed by and construed in accordance with

8    the laws of the Commonwealth of Virginia."  *See SAs,* §§ 14.  There is a "strong policy" in

9    California "favoring enforcement" of choice of law provisions like the ones in the SAs.  *See*

10   *Narayan v. EGL, Inc.*, 2007 WL 2021809, *4 (N.D. Cal. July 10, 2007) (quoting *Nedlloyd Lines*

11   *B.V. v. Superior Court*, 3 Cal.4th 459, 464-465 (1992)).  These choice of law provisions will be

12   enforced unless Virginia has "no substantial relationship to the parties or the transaction" or

13   application of Virginia law would be contrary to a fundamental policy of California.  *See id.* at

14   *6 (citing Restatement (Second) of Conflicts of Law § 187(2)).

15           Virginia has a substantial relationship to the parties because Diakon is headquartered

16   there.  *See Nedlloyd Lines*, 3 Cal.4th at 467 (substantial relationship exists where one party is

17   domiciled or resides in the chosen state).  And fundamental policies of California and Virginia

18   are not implicated here, where the issue is simply the enforcement of the parties' contractual

19   promises.  *See id.* at 468 (difference in state law with respect to enforcement of implied covenant

20   of good faith and fair dealing does not implicate either state's fundamental interests, but rather

21   implicates general interest in having promises performed).  Diakon's indemnity claims do not

22   seek to waive or avoid any benefits the California Labor Code confers upon employees.  If

23   Plaintiffs prevail (which they will not), they will presumably receive whatever relief to which

24   they are entitled.  Diakon's indemnity claims do not seek to preclude this relief or to take it away

25   once it has been awarded.  Diakon's indemnity claims simply address whether Third-Party

26   Defendants are obligated to make Diakon whole in the event Plaintiffs are successful.  *See Estes*

27

28

*Express Lines, Inc. v. Chopper Express, Inc.*, 641 S.E.2d 476, 480 (Va. 2007) ("indemnity provisions do not bar or even diminish an injured party's ability to recover").[3]

Soto and Third-Party Defendants will likely argue that, because Plaintiffs have brought their claims under the California Labor Code, Diakon's indemnity claims are not subject to the SAs' choice of law provisions at all. This is not correct. First, as the decision in the *Narayan v. EGL* case demonstrates, the fact an employment reclassification case seeks relief under the California Labor Code is not dispositive of the applicability of a contractual choice of law provision. *See* 2007 WL 2021809, *4. Second, the argument simply misses the point. The basis for *Plaintiffs'* claims is irrelevant. Diakon's indemnity claims arise under the SAs. The issue here is whether Soto and Third-Party Defendants must indemnify Diakon under the terms of their SAs. Construction of the SAs, including construction of their indemnity provisions, is precisely what the choice of law provisions govern.

### C.   The Third-Party Complaint Should Not Be Dismissed

#### 1.   Diakon's Third-Party Complaint Seeks Indemnity For The Same Kinds Of Third-Party Claims Third-Party Defendants Say Are Covered

Third-Party Defendants assert that the indemnity provisions only apply to claims by third-parties. The Third-Party Complaint *does* seek indemnity with respect to claims asserted by third-parties: Plaintiffs are "third-parties" with respect to the SAs of the Third-Party Defendants. The three individual Plaintiffs are the only parties that have sued Diakon here. Third-Party Defendants are business entities that employed Plaintiffs. Diakon seeks indemnity from Third-Party Defendants for the claims that their employees have asserted against Diakon pursuant to the indemnity provisions of the Third-Party Defendants' SAs.

---

[3] Thus, the Court should reject any assertion that Diakon's indemnity claims are void as against public policy for avoiding the requirements of the California Labor Code. Again, if Plaintiffs prevail, they will receive whatever relief to which they are entitled.

## 2.      Plaintiffs' Claims Are Covered By The Indemnity Provisions

The claims Plaintiffs have asserted against Diakon fall squarely within the indemnity provisions of the Third-Party Defendants' SAs.  In their SAs, Third-Party Defendants agreed to indemnify Diakon for "any and all claims, losses, liabilities, costs and expenses of any kind whatsoever, including, without limitation,... [those] arising out of, or resulting from … [Third-Party Defendants'] performance of the services arising out of or relating to this Agreement …." *See SAs*, §§ 6.  The phrase "arising under" is broader than "caused by," and expansively encompasses things "originating from," "flowing from," "having connection with," and "significantly related to" the subject of the phrase.  *See Trex Co. v. Exxonmobil Oil Corp.*, 234 F. Supp. 2d 572, 577 (E.D. Va. 2002) (applying Virginia law).

The claims Plaintiffs have asserted in the underlying action arise out of Third-Party Defendants' performance under their SAs.  Indeed, Plaintiffs' claims would not exist but for the performance of Third-Party Defendants under their SAs.  Specifically, Third-Party Defendants employed Plaintiffs to perform the transportation services contemplated by the Third-Party Defendants' SAs.  Plaintiffs now claim they were Diakon's employees.  Because Plaintiffs' claims involve their employment status at the time they furnished the labor that helped Third-Party Defendants perform the transportation services called for under their SAs, Plaintiffs' claims against Diakon necessarily arise out of and result from the services Third-Party Defendants provided under their SAs.  Plaintiffs' claims are therefore covered by the indemnity provision in Third-Party Defendants' SAs.

## 3.      *Ejusdem Generis* Does Not Apply

Third Party Defendants assert that the indemnity provisions are limited to claims falling into one of three listed categories under the maxim *ejusdem generis*.  This argument ignores the fact that Third-Party Defendants agreed to indemnify Diakon for "*any and all* claims, losses, liabilities, costs and expenses of *any kind whatsoever* …."  *See SAs*, §§ 6 (emphasis added).  While the SAs list three categories of claims falling within the indemnity provisions, those provisions expressly state that the indemnity obligations include those claims "*without limitation*."  *Id.* (emphasis added).  In other words, Third-Party Defendants explicitly agreed that

their indemnity obligations would *not be* limited to the types of claims listed by way of example in the indemnity provision. *Ejusdem generis* simply does not apply where, as here, the general provisions are clear and unambiguous. *See*, *e.g.*, *Wellmore Coal Corp. v. Patrick Petroleum Corp.*, 808 F.Supp. 529, 535-36 (W.D. Va. 1992) ("The rule of *ejusdem generis* 'should not be applied so as to do violence to the language employed in the instrument'. . . . *Ejusdem generis* is not a cast iron rule, it does not override all other rules of construction, and is never applied to defeat the real purpose [when] that purpose may be gathered from the whole instrument.")(citations omitted); *W.F. Magann Corp. v. Va.-Carolina Elec. Works, Inc.*, 123 S.E.2d 377, 381 (Va. 1962) (holding that since the language of the contract was clear the rule of *ejusdem generis* was inapplicable and the subcontractor's liability to indemnify was not limited thereby).[4]  Third-Party Defendants understandably want to re-write their indemnity agreements to include the kind of limitation they favor, but the Court should not allow this. *See Trex Co.*, 234 F.Supp.2d at 575 (stating that courts are not "'at liberty to rewrite the contractual language,' even if the plain language of the contract produced what 'some may consider a harsh result.'") (quoting *Foothill Capital Corp. v. East Coast Building Supply Corp.*, 259 B.R. 840, 845 (E.D. Va. 2001)).

### 4.    Third-Part Defendants Agreed To Indemnify Diakon For All Claims, Including Claims Alleging The Fault Of Diakon

Third-Party Defendants do not dispute that one party to a contract may agree to indemnify another party for claims arising from some fault of the potential indemnitee.  This kind of indemnity is acceptable under Virginia law.  *See, e.g., Estes Express Lines, Inc. v. Chopper Express, Inc.,* 641 S.E.2d 476, 479-80, and n. 8 (Va. 2007) (noting that parties may obtain indemnity for their own negligence) (citing *Chesapeake & Ohio Ry. Co. v. Clifton Forge-*

---

[4] The same is true under California law. *See McAllister v. Metzger*, 220 Cal. App. 2d. 692, 704 (1963) ("Nowhere in the entire provision . . . is there any such general language following particular terms so as to bring the desired rule [*ejusdem generis*] into play.  Nor do we find anywhere any inconsistency or ambiguity [in the contract] which is an essential prerequisite to invoking the rule.").

1    *Waynesboro Telephone Co.,* 224 S.E.2d 317 (Va. 1976)).  They claim, however, that the

2    indemnity provisions are not explicit enough to require them to indemnify Diakon in connection

3    with Plaintiffs' claims.  This is incorrect.

4         As noted above, Third-Party Defendants agreed to broad and sweeping indemnity

5    obligations, promising to indemnify Diakon for "*any and all* claims, losses, liabilities, costs and

6    expenses of *any kind whatsoever … without limitation* …."  *See SAs*, §§ 6 (emphasis added).

7    The Virginia Supreme Court approved a broader provision in the *Chesapeake & Ohio Ry.* case

8    cited by the court in the *Estes Express Lines* case, which obligated the telephone company to

9    "assume[] all risks of loss or damage of any nature to [the company's telephone lines], however

10   caused."  *See Chesapeake & Ohio Ry.* 224 S.E.2d at 318-319.  The telephone company sued the

11   railroad for property damage and argued that this loss-shifting provision was unenforceable

12   because it would relieve the railroad of responsibility for its own fault.  The Virginia Supreme

13   Court rejected the telephone company's argument and held that the provision was enforceable.

14   *Id.*[5]

15        Similarly broad indemnity provisions were upheld in *Richardson v. Econo-Travel Motor*

16   *Hotel Corp.*, 553 F.Supp. 320 (E.D. Va. 1982) (applying Virginia law), which involved a claim

17   for indemnity by a hotel company against the hotel's licensee relating to negligence claims by an

18   injured hotel guest against the hotel company.  There, the licensee that operated the premises

19   agreed to "indemnify" the hotel company and hold it "harmless from and against any and all

20   claims for damage to persons or property arising from, out of or in any way relating to the

21   operation of" the hotel."  *Id.* at 321.  The plaintiff in the underlying case sued the hotel company,

22   claiming it was negligent.  The licensee claimed, among other things, that its agreement to

23

24   [5] It is true the *Chesapeake and Ohio Ry.* case involved an exculpatory clause and not an
     indemnity provision, but the distinction is irrelevant for purposes of evaluating the coverage of
25   the operative language.  The Virginia Supreme Court deems the *Chesapeake and Ohio Ry.* case
     to be pertinent to indemnity provisions.  *See Estes Express Lines, Inc.*, 641 S.E.2d 476, 479-80,
26   and n.8 citing *Chesapeake & Ohio Ry. Co.* for the proposition that a party may agree to
27   indemnify another party for that party's own negligence).

28

indemnify the hotel company for the hotel company's own negligence was void as a matter of public policy.  The court disagreed, citing the *Chesapeake & Ohio Ry. Co.* case noted above.[6]  *See id.* at 322-323 (citing *Chesapeake & Ohio Ry. Co.*).  The court in the *Richardson* case also observed that the contractual indemnity language there was "clear and unambiguous" and covered the plaintiff's negligence claims against the hotel company.  The provisions here are no broader than those approved of in the *Richardson* case.

Diakon has asserted claims for indemnity against Third-Party Defendants for the claims their employees (Plaintiffs) have asserted against Diakon.  These are the same kind of third-party claims that Third-Party Defendants concede are generally covered by their indemnity agreements.  And the particular claims at issue here fall squarely within the terms of the indemnity provisions.  Diakon's Third-Party Complaint therefore states a claim upon which relief may be granted.  It should not be dismissed.

**D.   The Counterclaim And Third-Party Complaint Should Not Be Dismissed Because Diakon Will Be Entitled To Indemnity When It Prevails**

The argument of Soto and Third-Party Defendants is premised on the premature contention that Diakon has violated California law and will lose this case.  As noted above, however, the Court must take all of Diakon's allegations as true when determining whether Diakon has stated a claim upon which relief can be granted.  *See Kahle*, 474 F.3d at 667.  Diakon denies all of Plaintiffs' material allegations and particularly contends that Plaintiffs were actually the employees of Third-Party Defendants.  The question therefore is whether, assuming all of this is true and Diakon prevails, Soto and Third-Party Defendants must indemnity Diakon for the costs it has and will continue to incur.  They must.

First, Third-Party Defendants must indemnify Diakon in the event Diakon prevails.  As noted above, the claims Plaintiffs have asserted here are covered by the terms of the indemnity provisions in the SAs.  Thus, even if those provisions somehow did not require Third-Party

---

[6] This further demonstrates that courts properly rely on the *Chesapeake & Ohio Ry. Co.* case when evaluating indemnity provisions under Virginia law.

Defendants to indemnify Diakon in the event Plaintiffs prevail, the Third-Party Complaint should not be dismissed because the provisions require indemnity in the event Diakon prevails. And because the Court must, for purposes of the motions to dismiss, assume that Diakon will prevail, the motions to dismiss must be denied.

The same is true for Soto. His individual claims are likewise covered by the indemnity provision in his SA for the reasons discussed above. And the court should reject any suggestion that Soto's indemnity obligation is limited to situations in which Diakon is sued by a third-party for conduct of Soto. Nothing in the indemnity provision, or in any other part of Soto's SA, imposes such limits. Rather, Soto's SA specifically provides that Soto must "indemnify [Diakon]" for "any and all claims, losses, liabilities, costs and expenses of any kind whatsoever … incurred by or asserted against [Diakon] and arising out of, or resulting from, in whole or in part, [Soto's] … performance of the services arising out of or relating to this Agreement." *See Soto's SA* § 6. This provision covers actions against Diakon by Soto himself because Soto's claims "arise out of" and "result from" Soto's "performance of" his services under the SA. Thus, if Diakon prevails, Soto must indemnify Diakon for the costs and fees it incurs defending against his individual claims.

Diakon has stated a plausible right to indemnity from Third-Party Defendants and from Soto in the event Diakon prevails on Plaintiffs' claims. The Third-Party Complaint and Counterclaim should accordingly not be dismissed.

## IV. **CONCLUSION**

The Court should not dismiss the Counterclaim or the Third-Party Complaint. Both seek indemnity relating to the claims Plaintiffs have asserted in the underlying action against Diakon. These claims are covered by the express terms of the applicable indemnity provisions. Diakon has accordingly stated plausible claims upon which relief can be granted, and the motions to dismiss should be denied.

Respectfully submitted,

SCOPELITIS, GARVIN, LIGHT,
  HANSON & FEARY, P.C.

*/s/James H. Hanson*
James H. Hanson
Robert L. Browning
R. Jay Taylor Jr.
Christopher C. McNatt Jr.

**Attorneys for Defendant/Counter-claimant/Third-Party Plaintiff, Diakon Logistics (Delaware) Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically this 28th day of July, 2008.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Derek J. Emge
Emge & Associates
550 West C Street, Suite 1600
San Diego, California  92101

David A. Huch
Law Offices of David A. Huch
7040 Avenida Encinas, Suite 104
Carlsbad, California  92011

Todd J. Hilts
Law Office of Todd J. Hilts
2214 Second Avenue
San Diego, California  92101

*/s/James H. Hanson*
James H. Hanson

h:\users\lnewton\rjf\diakonlog-10610\consolidated plead\diakon consolidated opp to p mot to dismiss cc and 3pc 07.28.08 draft.doc