1   Derek J. Emge (SBN 161105)
    EMGE & ASSOCIATES
2   225 Broadway, Suite 1350
3   San Diego, CA  92101
    Telephone:     (619) 595-1400
4   Facsimile:     (619) 595-1480

5   Issa J. Michael (SBN 184256)
    THE MICHAEL LAW FIRM
6   1648 Union Street, Suite 201
    San Francisco, CA  94123
7   Telephone:     (415) 447-2833
    Facsimile:     (415) 447-2834
8
9   Attorneys for Plaintiffs JOSUE SOTO, Individually and On Behalf of
    All Others Similarly Situated, and on Behalf of the General Public

10

11                 **IN THE UNITED STATES DISTRICT COURT**

12                 **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  JOSUE SOTO, GHAZI RASHID,          **Case No. 08-CV-0033-L (WMc)**
    MOHAMED ABDELFATTAH, Individually  Complaint Filed:  December 5, 2007
15  and On Behalf of All Others Similarly
    Situated, and on Behalf of the General  **CLASS ACTION**
16  Public,
                                        **MEMORANDUM OF POINTS AND**
17                      Plaintiffs,     **AUTHORITIES IN SUPPORT OF**
                                        **PLAINTIFFS' MOTION FOR CLASS**
18  v.                                  **CERTIFICATION**

19  DIAKON LOGISTICS (DELAWARE),        Special Briefing Schedule Ordered
20  INC., a Foreign Corp.; and DOES 1 through
    50, Inclusive,                      DATE:       January 14, 2013
21                                      TIME:       10:30 a.m.
                        Defendants.     JUDGE:      Hon. M. James Lorenz
22                                      CRT. RM.:   14

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION .................................................................................................... 1

II.  THE PROPOSED CLASS ..................................................................................... 3

III.  STATEMENT OF FACTS AND EVIDENCE........................................................ 5

    A.  The Service Agreement Is Common To All Class Members................................ 6

    B.  The Length of Contract and the Defendant's Right To Terminate Is Subject To Common Proof ............................................................................................... 7

    C.  The Business Entity Requirement Applied To All Class Members....................... 8

    D.  The Operation Of One Delivery Truck By Each Class Member ........................... 9

    E.  Scheduling Is Part Of Defendant's Common Right To Control ........................... 9

    F.  The Method and Manner Of Compensation Is Subject To Common Proof .......... 10

    G.  Charges For Business Expenses Are Uniform For All Class Members................ 11

    H.  Diakon Has the Right To Control Uniforms Worn By All Class Members .......... 11

    I.  Trip Sheets Are Required For All Class Members ................................................. 11

    J.  Diakon Controls Quality and Performance Through Ride Behinds ...................... 12

    K.  Diakon Requires All Class Members To Carry the Same Insurance .................... 13

    L.  Prior Determination Of Employment Status ........................................................ 13

IV.  THIS ACTION MEETS THE REQUIREMENTS OF RULE 23(A)............................... 14

        1.  Rule 23(a)(1) – Numerosity ....................................................................... 14

        2.  Rule 23(a)(2) – Commonality ................................................................... 14

        3.  Rule 23(a)(3) – Typicality......................................................................... 16

    A.  Rule 23(a)(4) – Adequacy of Representation........................................................ 17

V.  THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ..................................... 18

VI.  CLASS TREATMENT OF THE ACTION IS THE MOST FAIR AND EFFICIENT METHOD OF ADJUDICATING THE CONTROVERSY.......................... 22

    A.  Putative Class Members Have Shown No Interest In Individually Controlling the Prosecution Of Separate Actions .................................................. 22

    B.  No Related Litigation Has Been Commenced by Class Members ....................... 22

    C.  Concentrating These Claims In the Southern District Is Desirable ..................... 23

i

D.      There Are No Foreseeable Difficulties In the Management Of the Class
        Action ................................................................................................................... 23

VII.    PROPOSAL FOR CLASS NOTICE ................................................................................ 23

VIII.   CONCLUSION ................................................................................................................. 24

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>C</u><u>ASES</u>

3
4
*Air Couriers Intl. v. Employment Development Dept.*
150 Cal.App.4th 923 (2007)..............................................................................2

5
*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997)........................................................................................18

6
7
*Antelope Valley Press v. Poizner,*
162 Cal.App.4th 839 (2008)..............................................................................8

8
9
*Arias v. Superior Court,*
46 Cal.4th 969 (2009) ....................................................................................21

10
*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001)..........................................................................17

11
12
*Ayala v. Antelope Valley Newspapers, Inc.*
2012 Cal.App. LEXIS 1083 ........................................................................4, 19

13
14
*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,*
917 F.2d 1171 (9th Cir. 1990)....................................................................16, 19

15
*Cortez v. Purolator Air Filtration,*
23 Cal.4th 163 (2000) ....................................................................................21

16
17
*Cristler v. Express Messenger Systems, Inc.,*
171 Cal.App.4th 72 (2009) ..............................................................................8

18
19
*Dalton v. Lee Publications,*
2010 U.S. Dist. LEXIS 75132 (S.D. Cal. 2010) ................................................21

20
*FedEx Ground Package System, Inc. v. Estrada,*
154 Cal.App.4th 1 (2007)........................................................................passim

21
22
*Grant v. Woods,*
71 Cal.App.3d 647 (1977)................................................................................8

23
24
*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)....................................................................16, 18

25
*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992)..........................................................................16

26
27
*Hudgins v. Neiman Marcus Group, Inc.,*
34 Cal.App.4th 1109 (1995)............................................................................21

28

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*JKH Enterprises, Inc., v. Department of Industrial Relations*,
  142 Cal.App.4th 1046 (2006) ................................................................. 19

*Johnson v. California*,
  543 U.S. 499 (2005) ............................................................................ 17

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ............................................................... 20

*Marsu, B.V. v. Walt Disney Co.*,
  185 F.3d 932 (9th Cir. 1999) ............................................................... 21

*McKenzie v. Fed. Express Corp.*,
  275 F.R.D. 290, 2011 U.S. Dist. LEXIS 65278 (C.D. Cal. 2011) ......................... 19

*O'Donnell v. TD Ameritrade, Inc.*,
  2008 U.S. Dist. LEXIS 49829 (S.D. Cal 2008) ...................................... 14

*Perez v. Safety-Kleen Systems, Inc.*,
  2007 U.S. Dist. LEXIS 483088 (N.D. Cal. June 27, 2007) .................................. 21

*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*,
  48 Cal.3d 341 (1989) ................................................................... 1, 2, 19

*Smith v. Cardinal Logistics Management Corporation*,
  2008 U.S. Dist. Lexis 117047 ........................................................ 10, 15, 19

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................... 17

*Thomas v. Baca*,
  231 F.R.D. 397 (C.D. Cal. 2005) ........................................................ 16

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ............................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
  2011 U.S. LEXIS 4567, 131 S. Ct. 2541 (2011) ............................................ 14, 15

*Wershba v. Apple Computer*,
  91 Cal.App.4th 224 (2001) ............................................................... 18

## <u>STATUTES, RULES & REGULATIONS</u>

Federal Rules of Civil Procedure
    Rule 23 ......................................................................................................... 3, 16
    Rule 23(a) ......................................................................................................... 14
    **Rule 23(a)(1)** ................................................................................................... 14
    **Rule 23(a)(2)** ................................................................................................... 14
    **Rule 23(a)(3)** ................................................................................................... 16
    **Rule 23(a)(4)** ................................................................................................... 17
    Rule 23(b) ......................................................................................................... 22
    **Rule 23(b)(3)** ............................................................................................ 18, 22
    Rule 23(c)(2)(B) ............................................................................................... 23

California Business & Professions Code
    §17200 ................................................................................................................. 3

California Labor Code
    §226 ..................................................................................................................... 2
    §226.3 .................................................................................................................. 2

California Code of Regulations, Title 8,
    §11090 (9) ......................................................................................................... 20

Labor Code
    §226 ................................................................................................................... 21
    §2802 ............................................................................................................ 2, 20

## I.        **INTRODUCTION**

Plaintiffs JOSUE SOTO, GHAZI RASHID and MOHAMED ABDELFATTAH ("Named Plaintiffs"), allege that DIAKON LOGISTICS (DELAWARE), INC. ("Diakon" or "Defendant") misclassified a discrete group of approximately 345 California delivery-truck drivers who worked for Diakon making home deliveries of furniture and household appliances for Diakon's retail customers.  Diakon uniformly classified each and every one of its drivers as "independent contractors," when in fact they were Diakon employees as a matter of law.  This issue of misclassification is the primary legal issue in the present case and is common to all class members.

Pursuant to California law, the "principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired…." *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d 341, 350 (1989).  Although the right to control the details of work is the most important factor, courts also look at the following common law factors as indicative of the nature of the service relationship:

1)  the right to discharge at will, without cause;

2)  whether the one performing services is engaged in a distinct occupation or business;

3)  the kind of occupation, with reference to whether the work is usually done under the direction of the principal or by a specialist without supervision;

4)  the skill required in the particular occupation;

5)  the length of time for which the services are to be performed;

6)  whether the principal or the worker supplies the instrumentalities, tools, and place of work;

7)  the method of payment, whether by the time or by the job;

8)  whether or not the work is a part of the regular business of the principal; and

9)  whether or not the parties believe they are creating the relationship of employer-employee.

/ / /

1

("*Borello* factors."). *See, S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d at 351.

An employer cannot escape the true employer-employee relationship simply by express written contract, appearance, waiver or subterfuge. *Id.* at 349 ("[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced."); *see also FedEx Ground Package System, Inc. v. Estrada,* 154 Cal.App.4[th] 1, 12 (2007) (certified class of delivery-truck drivers were determined to be employees, even though they were required to sign contracts specifying that they were independent contractors); *Air Couriers Intl. v. Employment Development Dept.* 150 Cal.App.4[th] 923, 939 (2007) (delivery drivers determined to be employees for purposes of tax assessment, despite the existence of written agreements identifying them as independent contractors).

Here, Plaintiffs contend that under the under the *Borello* factors, they and members of the proposed class were all employees of Diakon rather than independent contractors. Plaintiffs further contend that Diakon deliberately misclassified them in an effort to evade the protections of the California Labor Code, including the provisions of Labor Code Section 2802 that required Diakon to reimburse its drivers thousands of dollars each month for business expenditures necessary to complete deliveries for Diakon, including the costs of fuel, truck insurance, liability insurance, disability insurance, uniforms and promissory note payments. (California Labor Code Section 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer…").

The misclassification of the putative class of California truck drivers is the threshold legal issue common to all drivers. The determination of that common issue affects each of Plaintiffs' claims, including the aforementioned failure to reimburse employees for necessary expenditures, Diakon's failure to provide properly itemized wage statements (Cal. Labor Code §§226 and 226.3); Diakon's liability for penalties under the Labor Code Private Attorney General Act of 2004 ("PAGA"); and Diakon's unlawful, unfair or fraudulent business practices

/ / /

1   in the form of uniform and systematic labor code violations (California Unfair Competition Law

2   ("UCL") Business & Professions Code §§17200 *et seq.*[1]

3       Named Plaintiffs seek a determination that they have been misclassified and seek to

4   recover unpaid wages, reimbursements of expenses, and penalties on behalf of themselves and

5   all other similarly situated California drivers who have been misclassified as independent

6   contractors by Defendant.  Specifically, Named Plaintiffs seek (1) class certification of this entire

7   action pursuant to Federal Rules of Civil Procedure, Rule 23; (2) appointment of Named

8   Plaintiffs as class representatives; and (3) appointment of Emge & Associates and The Michael

9   Law Firm as class counsel.

10  **II.      THE PROPOSED CLASS**

11      Named Plaintiffs seek certification of the following Class:

12          All persons who performed work for Diakon Logistics (Delaware)
            Inc. as a delivery-truck driver in the State of California between
13          December 5, 2003 and the present and were designated and paid by
            Diakon as an independent contractor rather than an employee, and
14          who did not employ or use other drivers to perform the work
            assigned to them by Diakon.
15

16      The proposed class description is more limited than that which was proposed in

17  Plaintiffs' first motion to certify, which was denied without prejudice.  [Doc. No. 156].  Since

18  that time, additional discovery has been obtained that clarifies which drivers drove their own

19  trucks, and which drivers hired other drivers to perform their duties.  Between December 5, 2003

20  and December 31, 2011,[2] 471 drivers drove delivery routes in California under the direction and

21  control of Diakon.  Defendant identifies 345 drivers who drove all routes personally, rather than

22  hiring another driver to work in their place.  Named Plaintiffs, just as all members of the

23  proposed class, personally performed their work duties for Diakon and did not retain other

24  drivers to do so.  This more limited class description removes any need to inquire into individual

25  reasons why a driver may have hired another driver to perform the required delivery duties since

26

27  [1] Plaintiffs have dismissed the First Claim (Failure to Pay Minimum Wages); the Second Claim (Failure to
    Provide Meal Periods) and the Third Claim (Failure to Provide Rest Periods).
28  [2] The parties agreed to update discovery through 12/31/2011 and base their arguments in the present
    motion upon the drivers identified through that date.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          08-CV-0033L (WMc)

1  no drivers in the proposed class did so.[3]  To the extent that Diakon had a policy allowing drivers

2  to hire substitute drivers, that policy, and its impact on the question of employment

3  classification, would be subject to common proof.  Plaintiffs therefore seek to certify a class of

4  approximately 345 California drivers who personally drove delivery trucks under Diakon's

5  direction and control.  Further, there is no apparent reason to create subclasses of drivers based

6  on which distribution center they operated out of because each factor establishing the employer-

7  employee relationship is subject to classwide proof as discussed in greater detail below.

8       Certification of the proposed class is appropriate.  The class members are all drivers who

9  made deliveries for Diakon's retail clients in California and who were all subject to the same

10 policies, procedures and requirements of Diakon.   As the Court in *FedEx* emphasized,

11 certification is proper for misclassification claims because the employer's practices are "relevant

12 to the class as a whole, not just to the drivers who happened to be the subject of a particular

13 anecdote."  *FedEx Ground Package System, Inc. v. Estrada,* 154 Cal.App.4th at 14.

14      While there are undoubtedly some differences in the methods employed to motivate and

15 punish drivers in different distribution centers, as would be true in any employment case when

16 there are interactions between employees and supervisors, such variations do not present

17 individual issues that preclude class certification.  *Ayala v. Antelope Valley Newspapers, Inc.*

18 2012 Cal.App. LEXIS 1083.  Rather, the evidence is clear that Diakon exercised a tightly

19 controlled *system* for managing its delivery drivers.  The system employed by Diakon was

20 absolutely essential to ensure that more than 300 delivery drivers across the state performed their

21 duties in compliance with the timing, safety and quality standards that Diakon guaranteed to its

22 retail customers that it would provide if they hired Diakon.  Thus, all material aspects of the

23 relationship between Diakon and the class members are subject to common proof, and any

24 individual circumstances are peripheral and immaterial.

25 / / /

26 / / /

27 / / /

28

---

[3] Declaration of Derek J. Emge ("Emge Decl."), ¶12.

4

### III.   STATEMENT OF FACTS AND EVIDENCE

Defendant is a national delivery company with home-delivery operations in California. Defendant advertises itself as "one of the largest national warehousing, logistics, and home delivery companies in the U.S."[4]  It advertises that it "specialize[s] in delivering retailer's larger merchandise from their warehouses or other facilities to customers' homes, expert unpacking and setup, and personalized customer care."[5]  Defendant provides home-delivery services for its business customers such as Sears, The Great Indoors, Jerome's Furniture, Ethan Allen and GE. Defendant's delivery services are provided exclusively through hundreds of delivery drivers (at times called owner/operators) such as Named Plaintiffs and the class members.  The work performed by Defendant's drivers is integral and essential to Defendant's core business.  Without the drivers, home deliveries could not be completed and Defendant would have no business.[6]

The three Named Plaintiffs are all former drivers who drove delivery trucks under the direction and control of Defendant at different distribution centers throughout California. JOSUE SOTO delivered furniture from Defendant's business customer, Jerome's Furniture, based in San Diego, California.  GHAZI RASHID and MOHAMED ABDELFATTAH delivered furniture and appliances for Defendant's business customer, Sears, based in Sacramento, California and Benicia, California.   Between December 5, 2003 and December 31, 2011, Defendant had 345 different class members who drove delivery routes for Diakon in California. Each and every driver was labeled an independent contractor.  Common facts predominate on the issue of whether these class members were all misclassified.  The following factors, whether more supportive of employee status or independent-contractor status, are subject to common proof as to all class members and demonstrate the predominance of common facts to be considered for the threshold common legal issue – whether class members were misclassified.

/ / /

/ / /

---

[4] Advertising material from Defendant's Internet website 2006-2010:  http://www.diakonlogistics.com/aboutus.htm, attached as Exhibit "A" to Emge Decl.
[5] Id. at http://www.diakonlogistics.com/services.htm.
[6] Declaration of Charles H. Johnson filed in opposition to the previous motion for class certification [Doc. No. 97-1], ¶4.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          **08-CV-0033L (WMc)**

A.      **The Service Agreement Is Common To All Class Members**

Before commencing driving duties for Defendant, all class members were required to submit the same application.[7]  All were required to pass the same physical.[8]  The application process is the same regardless of which of Diakon's retail clients had furniture to deliver.[9]  Once drivers passed the application process, they were required to execute a standard, form service agreement.  The same service agreement is used for all drivers each year.[10]  On several occasions during the class period, the service agreements were revised.  These changes were nominal and were universally applicable to all drivers.  [Compare versions for years 2003, 2004, 2006, 2007 and 2009.][11]

Defendant designated each Named Plaintiff and all class members as independent contractors, regardless of location or length of service.[12]  No drivers were ever designated as employees.[13]  Regardless of which distribution center drivers worked at and regardless of the retail seller of the products they delivered, Defendant's day-to-day treatment of the drivers was systematic and did not differ.[14]  Defendant's classification of its drivers as independent contractors was universal and common to all class members.

The service agreement sets forth identical rights and obligations of all class members.[15]  **Section 1** describes job duties as:  "deliver consumer items for the Company's customers and to perform such other related services as may be necessary to serve the Company's customers."  **Section 3** and Exhibit A set forth the same, regular pay schedule (twice per month) and the same rate of pay for all class members.  **Section 4** states that:  1) each class member must "provide its own vehicle or vehicles and furnish such labor as is necessary to fulfill its obligations;" 2) Defendant may "require that the Contractor's delivery personnel <u>wear uniforms as designated by</u>

---

[7] Deposition of Charles Johnson ("Johnson Depo."), 19:11-13, attached as Exhibit "B" to Emge Decl. Charles Johnson is the current president and former executive vice president of Diakon Logistics (Delaware), Inc. and was produced as a 30(b)(6) deponent on behalf of Defendant.
[8] *Id.* at 20:16-18.
[9] *Id.* at 19:17-19; 21:6-8.
[10] *Id.* at  60:1-3; 138:15-20; 139:6-10; 140:2-10.
[11] Emge Decl., ¶¶15-19, Exhibits "C-G."
[12] Johnson Depo., 40:11-17.
[13] *Id.*
[14] *Id.* at 56:22-25.
[15] Emge Decl., ¶¶15-19, Exhibits "C-G."

6

[Defendant]; and 3) that Defendant "may, at its option, require that the Contractor's delivery vehicles display the logo of the Company or its customer or other markings."  **Section 13** states that class members "shall not solicit, or attempt to solicit, directly or indirectly, any of the Company's customers, contractors or employees."  **Section 16** states that the service agreement is not assignable by class members.  **Section 17** sets forth the term of the agreement (one year) and that it may be terminated at-will upon written notice.  **Exhibit A** to the service agreement sets forth the system of penalties, chargebacks and deductions for loss or damage to items delivered or to homes where the deliveries occurred.

Commencing with the 2006 contract amendment, Defendant set forth the following:

> **SECTION 14. Control and Exclusive Use.**  While operating in the service of [DIAKON], [DIAKON] shall have such possession, control and use of the vehicle and its operation as required by 49 C.F.R.  Section 346.12(c)(1).    [DIAKON] shall assume complete responsibility for operation of the vehicle for the duration of this Agreement.[16]

Defendant's possession and control of all the trucks used in its operations is absolute and subject to common proof as to all drivers.

The essential terms of the service agreements entered into by all class members are the same.  Further, the terms of the service agreement are not negotiable by the drivers.[17]  The type of product being delivered (furniture vs. appliances) does not result in different contractual terms or treatment.[18]  The contours of the job are all set forth in these common agreements for all class members.

**B.     The Length of Contract and the Defendant's Right To Terminate Is Subject To Common Proof**

Every Service Agreements is a term agreement lasting for one year, after which time class members sign a new one-year service agreement.  There are no contracts for a specific

/ / /

---

[16] Example, Emge Decl., Exhibit "E."
[17] Deposition of Steven Hoswell ("Hoswell Depo."), 27:4-7, attached as Exhibit "H" to Emge Decl. Steven Hoswell was employed by Defendant for approximately four years in both Sacramento and Benicia distribution centers as the regional manager in charge of drivers.
[18] Johnson Depo., 56:5-8.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          **08-CV-0033L (WMc)**

1  project or task.  Class members were all paid on a regular basis every two weeks rather than after

2  the completion of each delivery or at the conclusion of each day.

3  Mr. Soto drove for Defendant for two-and-a-half years.[19]  Mr. Abdelfattah drove for

4  Defendant for nearly four years.[20]  Mr. Rashid drove for Defendant for a year-and-a-half.[21]  The

5  service agreements state:  "this Agreement may be terminated by either party upon no less than

6  60 days' [30 days in the current agreements] prior written notice to the other party."[22]  This right

7  to at-will termination is subject to common proof and strong evidence of an employment

8  relationship.  *Cristler v. Express Messenger Systems, Inc., 171 Cal.App.4th 72, 77* (2009);

9  *Estrada v. FedEx Ground Package Sys., Inc.,* 154 Cal.App.4th at 6, 11 [agreement providing for

10  termination with 30-day notice is evidence of at-will employment]; *Antelope Valley Press v.*

11  *Poizner,* 162 Cal.App.4th 839, 854 (2008) [termination within 30-day notice requirement

12  "clearly" gives employer the right to discharge at-will without cause].  This term applied to all

13  class members equally.

14  Defendant regularly exercises its right to control its drivers by terminating its drivers and

15  even its driver's helpers.[23]  The ability to fire at-will is also indicative of the control of an

16  employer.  *See, e.g. Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th at 11;

17  *Grant v. Woods*, 71 Cal.App.3d 647, 653 (1977).  The mere right to terminate at will is subject to

18  common proof.

19  **C.     The Business Entity Requirement Applied To All Class Members**

20  Plaintiff SOTO commenced working for Diakon under a contract that he signed in his

21  own name.  Thereafter, SOTO was required to create a business entity and execute a new

22  contract under the name of the entity.[24]  Between 2005 and 2012, Diakon enforced a policy that

23  all delivery drivers had to create a separate business entity and sign all forms in that capacity.[25]

24

---

25  [19] Plaintiffs' First Amended Complaint, ¶8.
[20] *Id.* at ¶10.

26  [21] *Id.* at ¶9.
[22] For example, Exhibit "E," ¶17.

27  [23] Defendant fired each of the Named Plaintiffs.  Additionally, Defendant fired Mr. Abdelfattah's helper.
Deposition of Mohamed Abdelfattah ("Abdelfattah Depo."), 259:13-25, Exhibit "I" to Emge Decl.

28  [24] Deposition of Josue Soto ("Soto Depo."), 86:7-11, attached as Exhibit "J" to the Emge Decl.
[25] Johnson Depo, 161:23-25.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          **08-CV-0033L (WMc)**

1  Diakon even provided prospective drivers with the forms necessary to create a business and

2  walked them through the process.[26]  This requirement that drivers create a business entity can be

3  determined on a classwide basis.

4  **D.       The Operation Of One Delivery Truck By Each Class Member**

5      Each driver was required to supply his or her own truck.  Plaintiffs are not seeking

6  reimbursement of the cost of renting delivery trucks since "it is perfectly lawful for an employer

7  to require its *employees* to provide their own vehicles as a condition of employment.  *Estrada v.*

8  *FedEx Ground Package System, Inc.*, 154 Cal.App.4[th] 1, 51 (emphasis added).  The ownership of

9  the trucks used by class members is not a factor in the determination of whether they were

10 employees or independent contractors and is distinguishable from the concept of proving one's

11 "instrumentalities, tools and the place of work."  The class is comprised of drivers who operated

12 their own delivery truck for Diakon.

13 **E.       Scheduling Is Part Of Defendant's Common Right To Control**

14     Defendant's system for scheduling drivers is the same for all distribution centers –

15 namely that Defendant controls all scheduling for all of its drivers.[27]  Class members do not get

16 to choose which days they work.[28]  Those who fail to show when scheduled are subject to

17 termination.[29]  Defendant does not give class members discretion to accept a partial number of

18 delivery stops in a given day.[30]  Class members are not allowed to reject a daily route without

19 facing termination.[31]  They are not allowed to set their own delivery rates with customers.[32]

20 They are required to attend morning stand-up meetings held by Defendant.[33]  These meetings are

21 announced by Defendant[34] and are always in the morning because all drivers had to be loaded

22 and "off the dock" by the same time.[35]  Diakon maintains a common system of disciplining its

23

24 [26] Soto Depo., 86:12-16.
   [27] Hoswell Depo, 37:11-17.

25 [28] *Id.*
   [29] *Id.* at 38:7-25; 39:1-3.

26 [30] *Id.* at 42:19-25.
   [31] Johnson Depo., 98:18-22; 152:4-12.

27 [32] *Id.* at 175:4-8.
   [33] *Id.* at 44:14-16.

28 [34] *Id.* at 45:17-19.
   [35] Hoswell Depo., 88:25; 89:1-22.

1  drivers for being late on deliveries.  Those that are late are subject to three potential disciplines

2  by Defendant:  1) a "chewing out" by the regional manager; 2) a reduction of the number of

3  delivery stops on future days, thereby reducing the driver's pay; or 3) termination.[36]  A similar

4  set of common factors supported certification of a class of delivery-truck drivers in *Smith v.*

5  *Cardinal Logistics Management Corporation*, 2008 U.S. Dist. Lexis 117047.

6       Class representatives also worked exclusively for Defendant as full-time drivers.  They

7  were not allowed to co-load the trucks or provide delivery services for any other company or

8  client while performing delivery services for Diakon; and in fact, Diakon advertises this as a

9  means of controlling the quality of its delivery services:

10       Because we **do not co-load** other companies' products on our
   trucks, we're able to serve as our clients' dedicated delivery

11       channel.  What's more, our highly effective routing technology and
   cellular communication network ensures on-time delivery and

12       customer satisfaction, while our proprietary tracking system allows
   us to keep clients apprised as to the location and expected delivery

13       time of each piece of merchandise.[37] (emphasis added).

14  Defendant's right to control the schedules of all class members is subject to common, classwide

15  proof.

16      **F.**    **The Method and Manner Of Compensation Is Subject To Common Proof**

17       The  service  agreements  set  forth  the  method  of  compensation,  the  timing  of

18  compensation and the amount of compensation universally for all class members.  Compensation

19  was determined by the number of deliveries successfully completed by each class member.[38]

20  Individual drivers were not allowed to negotiate or set delivery rates, make separate charges,

21  invoice Diakon or apply for bonuses, overtime or reimbursements.[39]

22       Every two weeks, Diakon prepared a settlement statement for each driver.  The

23  settlement statement showed the total gross income (based on the number of deliveries) and the

24  total deductions.  Deductions were made for General Liability Insurance; Rental Truck

25  Insurance;  Disability  Insurance;  Promissory  Note  Payments;  Chargebacks  (for damage to

26

27  [36] Hoswell Depo., 84:10-22.
   [37] http://www.diakonlogistics.com/services.htm, (Exhibit "A").

28  [38] Johnson Depo., 109:2-9.  Exemplar, Exhibit "L."
   [39] *Id.* at 173:17-24.

customer's residence or product); and Uniforms.[40]   The categories of compensation and deductions were uniform for all drivers and set by Diakon without negotiation or input by the drivers.  Although different delivery rates were applied throughout the class period or in different locations, Diakon set those rates and they were the same for all drivers making deliveries from the same location.[41]   This exclusive right to set the rates for all class members is subject to common proof.

### G.      Charges For Business Expenses Are Uniform For All Class Members

All class members are charged the same type of expenses on their biweekly settlement statements *by Defendant*, including truck insurance (physical damage), general liability/cargo liability insurance and disability insurance, phone equipment, phone bills, truck leases (not claimed in this lawsuit), fuel, uniforms, equipment, temporary labor and hotel bills.[42]   Class members are also required to pay for a performance bond, resulting in monthly deductions at a rate set by Defendant.[43]

### H.      Diakon Has the Right To Control Uniforms Worn By All Class Members

Diakon's right to control the uniforms worn by its drivers is subject to common proof.  In the driver contracts, Section 4 sets forth Diakon's control as follows:  Defendant may "require that the Contractor's delivery personnel wear uniforms as designated by the Company."  This contractual provision was, in fact, enforced as class members were required to pay for and wear particular uniforms determined by Diakon.[44]   Uniforms consisted of shirts and sometimes jackets with the name of Diakon's client for which each class member was providing home delivery.[45]

### I.      Trip Sheets Are Required For All Class Members

Every driver was required to fill out a daily Trip Sheet or manifest, which recorded their deliveries throughout the day.  The Trip Sheets were standard forms that were used at every delivery location operated by Diakon.  In addition to information about deliveries, the Trip

---

[40] Settlement Statement (Exhibit "L").
[41] Johnson Depo., 174:22-25; 175:1.
[42] Service agreement, Page 15, *See e.g.* Exhibit "E" to Emge Decl.
[43] *Id.* at Page 3.
[44] Abdelfattah Depo, 139:11-13; Rashid Depo., 97: 7-13; Soto Depo., 75:3-10.
[45] *Id*.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**                    **08-CV-0033L (WMc)**

1  Sheets recorded odometer readings, arrival time at the loading dock, departure time from the

2  loading dock and return time.

3  **J.      Diakon Controls Quality and Performance Through Ride Behinds**

4  Defendant advertises to its retail clients that the delivery services it provides through its

5  drivers, such as Named Plaintiffs, will satisfy all customers "by closely monitoring quality of

6  service.  Diakon tracks owner-operator performance daily and surveys every customer about the

7  team that delivered and installed their purchase.   For example, we ask about the team's

8  appearance, timeliness, quality of set-up, pre-call notification, product and home care – and most

9  importantly, whether the customer would have the team back to deliver again."[46]   (Emphasis

10  added.)

11  Diakon monitors the performance of class members with routine field checks variously

12  called "route audits," "drive behinds," "ride behinds," and "follow alongs."[47]  The purpose of

13  these field checks is to assure that class members are:  1) adequately protecting the floors of the

14  homes they deliver to; 2) speaking appropriately to customers; 3) wearing proper uniforms; 4)

15  driving in accordance with all traffic rules; and 5) driving trucks that pass their inspection.[48]  As

16  Defendant's president attests:  "Diakon has found that **the most efficient method of monitoring**

17  the delivery teams' **performance** is to conduct occasional ride behinds…" (emphasis added).

18  Declaration of Charles Johnson, ¶17[49].

19  Diakon also uses a system called Key Performance Indicators ("KPIs") to monitor class

20  member performance.   The use of KPIs is actually publically advertised by Diakon to

21  prospective customers as a way of ensuring consistency and quality in its delivery services:  "We

22  track performance through Key Performance Indicators (KPIs) and customer surveys to show

23  you – with actual feedback and statistics – that your expectations are being met, or more likely,

---

24  [46] http://www.diakonlogistics.com/ourphilosophy.htm) (Exhibit "A").

25  [47] "Follow-on" reports are generated by Defendant and document the monitoring of drivers performed by
    Diakon in the field.  Deposition of Samuel Rubio, Jr. ("Rubio Depo."), 54:11-25, Exhibit "M" to Emge

26  Decl.  Suspiciously, however, Defendant has never produced this documentation in response to a request
    for an exemplar of each form used by Diakon.

27  [48] Deposition of Steve Espinoza ("Espinoza Depo."), 44:14-25; 45:1-6, attached as Exhibit "N" to Emge
    Decl.); Rubio Depo., 55:21-25; 56:1-17; Deposition of David Lee Aguirre ("Aguirre Depo."), 60:5-20,

28  attached as Exhibit "O" to Emge Decl.
    [49] Doc. No. 126, Page 11:6-11, fn. 10.

1    exceeded."[50]  This uniform system demonstrates how Diakon had the right to control the means

2    and methods used by its drivers to complete Defendant's deliveries.  As one operations manager

3    testified:

> We had a big white board that we did with the scores for the
> owner/operators … all the KPI indicators, that we tracked.
> Everybody knew all the information that I had.  So if I had to – **if
> one of the owner/operators wasn't performing, per Diakon**, I
> couldn't go – **I wasn't supposed to work him** if it fell below a
> certain score or certain percentage….[51]

8    This system of control and discipline was not only promoted by Diakon to potential customers,

9    but required for Diakon to be able to guarantee the level of services it was offering.

10   **K.    Diakon Requires All Class Members To Carry the Same Insurance**

11    Diakon carries a policy of insurance through Marsh.  Damage caused to the delivery

12   trucks up to $3,000 are borne by the driver, as that is the amount of the insurance deductible.

13   Every class member is charged a monthly administrative charge to pay for Marsh's insurance.

14   Damages in excess of $3,000 are covered by the Marsh insurance policy.[52]

15   **L.    Prior Determination Of Employment Status**

16    The issue of drivers' employment status has previously been reviewed and determined the

17   California Workers Compensation Appeals Board and employee status was found.  For example,

18   Jerry McCoy worked as a delivery driver for Diakon.  Following an injury sustained while

19   performing delivery duties for Diakon, Mr. McCoy sought coverage under Diakon's Workers'

20   Compensation Insurance policy.  Thomas W. Harwayne, Workers' Compensation Administrative

21   Law Judge, filed an Order on November 29, 3007 finding that Mr. McCoy was an employee of

22   Diakon rather than an independent contractor.[53]

23   / / /

24   / / /

25   / / /

---

26   [50] www.diakonlogistics.com/about-us/our-difference/index.html, Exhibit "A."
27   [51] Hoswell Depo., 30:23-25; 31:1-10 (testifying how they controlled drivers at both the Sacramento and Benicia delivery centers).
28   [52] Johnson Depo., 67:1-25; 68:1-25.
[53] Exhibit "A" to Request for Judicial Notice filed concurrently herewith.

13

**IV.     THIS ACTION MEETS THE REQUIREMENTS OF RULE 23(a)**

Rule 23(a) sets forth the following prerequisites for class certification:

(1)     That the class is so large that joinder of all members is impracticable (numerosity);

(2)     That there are one or more questions of law and fact common to the class (commonality);

(3)     That the named parties' claims are typical of the class (typicality); and

(4)     That the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

### 1.     Rule 23(a)(1) – Numerosity

The proposed class clearly meets the numerosity requirement under Rule 23(a)(1).  As of December 31, 2011, there are approximately 345 drivers who fall within the class description.[54] Additional class members have likely been hired in the interim.  Ascertainability is not an issue, as Defendant has record of each and every driver during the class period.  Joinder of several hundred drivers as separate plaintiffs is, however, highly impracticable, as the expense and burden of bringing more than 300 separate lawsuits would be quite prohibitive.  Trying to prosecute multiple individual actions would be contrary to the purpose of class treatment and create undesirable, "fragmentary" enforcement of California's labor laws.  *O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829 (S.D. Cal 2008), citing *Gentry v. Superior Court,* 42 Cal.4th 443, 458-61 (2007).

### 2.     Rule 23(a)(2) – Commonality

Rule 23(a)(2) is satisfied when there are questions of law or fact that are common to the class.  The United States Supreme Court recently explained that commonality requires that the class members' claim "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 2011 U.S. LEXIS 4567, 131 S. Ct. 2541, 2551 (2011).  In other words, the plaintiff must demonstrate "'the capacity of a classwide proceeding to generate

---

[54] Emge Decl., ¶10.

POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION            08-CV-0033L (WMc)

common *answers*'" to common questions of law or fact that are "'apt to drive the resolution of the litigation.'"   *Id*. (quoting *Nagareda*, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, at 131-32 (2009)) (emphasis in original).

Here, the underlying common contention is that the class members were misclassified employees of Diakon.  The determination of this common issue will resolve the validity of each claim.  For purposes of the present motion, the common issue is whether the determination of employee status may be applied on a classwide basis or whether the determination requires too much individualized analysis.  *Smith v. Cardinal Logistics Management Corp.,* 2008 U.S. Dist. LEXIS 117047 *15 (N.D. Cal. 2008).   There can be no doubt that this case satisfies the commonality requirement based on any of the following common issues of fact:

- Whether Diakon required class members to sign substantially the same contracts;

- Whether the terms of the driver contracts were dictated entirely by Diakon;

- Whether Diakon required class members to form a business entity;

- Whether Diakon paid all class members pursuant to the same payment schedule and methodology;

- Whether Diakon prohibited all class members from negotiating directly with Diakon's customers;

- Whether Diakon prohibited all class members from co-loading or providing delivery services for other customers;

- Whether all class members were hired for periods of one year, subject to termination following 30 days' written notice;

- Whether Diakon had the right to discharge drivers at will and without cause;

- Whether class members were free to accept or refuse deliveries without punishment;

- Whether class members were required to attend morning stand-up meetings, have their trucks loaded by a certain time and leave the loading dock by deadlines established by Diakon;

- Whether Diakon charged all class members truck insurance (physical damage),

15

1    general liability/cargo liability insurance and disability insurance, phone equipment, phone bills,

2    truck leases, fuel, uniforms, equipment, temporary labor and hotel bills;

3              •    Whether Diakon determined which uniforms class members must wear;

4              •    Whether Diakon evaluated the performance of class members through ride-

5    behinds and rewarded or punished drivers according to their scores;

6              •    Whether Diakon charged class members for any damages to either merchandise

7    being delivered or to the homes where deliveries occurred;

8              •    Whether Diakon charged class members for any damage occurring to the trucks

9    they drove on Diakon's behalf;

10             •    Whether ownership of the trucks is relevant to employment status; and

11             •    Whether placing the Diakon Department of Transportation ("DOT") number on

12   the door of delivery trucks is relevant to employment status;

13             **3.    Rule 23(a)(3) – Typicality**

14             The typicality requirement of Rule 23(a)(3) is satisfied if the claim of the named class

15   representatives arises "from the same course of conduct that gives rise to claims of the unnamed

16   class members [and] . . . [is] based on the same legal theory that would be advanced were the

17   unnamed class members to bring individual actions . . . ." *Thomas v. Baca*, 231 F.R.D. 397, 401

18   (C.D. Cal. 2005); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("typicality"

19   test is whether members of proposed class "'have the same or similar injury, whether the action

20   is based on conduct which is not unique to the named plaintiffs, and whether other class

21   members have been injured by the same course of conduct'") (citation omitted).

22             Finding typicality does not require that the claims of the representative party be identical

23   to the claims of class members.  Rather, the Ninth Circuit has described the standard as a

24   "permissive" one, and held that "representative claims are 'typical' if they are reasonably

25   co-extensive with those of absent class members; they need not be substantially identical."

26   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Cal. Rural Legal Assistance,*

27   *Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (Rule 23 "does not require the

28   named plaintiffs to be identically situated with all other class members.  It is enough if their

16

situations share a 'common issue of law or fact' and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'") (citations omitted).   Thus, the typicality requirement is satisfied even if there are factual distinctions between the claims of the named plaintiff and those of other Class members.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds*, *Johnson v. California*, 543 U.S. 499 (2005).

In this case, Plaintiffs' claims against Diakon are based on the same legal theories as the claims of the proposed class.  Like other class members, Plaintiffs were delivery drivers during the class period, classified as independent contractors, and they signed substantially identical service agreements with Diakon.  They were all subject to the same policies and practices regarding classification as independent contractors, compensation and reimbursements of work-related expenses. These factors make their claims for liability typical of the claims of the entire class.

### A.      Rule 23(a)(4) – Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the Ninth Circuit, Rule 23(a)(4) is satisfied where counsel for the class is qualified and competent to vigorously prosecute the action, and where the interests of the proposed class representative are not antagonistic to the interests of the class.  *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, none of the three Named Plaintiffs have any conflicts of interests with other class members.[55]  They are all former employees, have no interaction with Defendant outside of this litigation, and seek only a resolution equal to that of all other putative class members.[56]  Counsel is similarly free of any conflicts or antagonism with class members.[57]

Plaintiffs and their counsel have litigated this case vigorously for nearly five years. Thousands of pages of documents have been discovered, a multitude of depositions have been taken and counsel has participated in complex and lengthy motion practice as well as

---

[55] Declaration of Josue Soto ("Soto Decl."), ¶12; Declaration of Ghazi Rashid ("Rashid Decl."), ¶10; and Declaration of Mohamed Abdelfattah ("Abdelfattah Decl."), ¶12.
[56] *Id.*
[57] Emge Decl. ¶8; Declaration of Issa J. ("Michael Decl.") ¶5.

mediation.[58]  Counsel are all experienced litigators in the area of California employment law and are familiar with the issues presented in the present case.[59]  Derek J. Emge has been appointed class counsel on numerous employee class actions.[60]  Plaintiffs and their counsel are prepared to continue their vigorous representation of all absent class members to conclusion.[61]  Counsel has the resources of two law firms, including associates, paralegals, support staff in both Northern and Southern California and sufficient economic resources to aggressively litigate the present matter.[62]

Plaintiffs' counsel has undertaken the representation of Plaintiff and absent class members on a contingency basis.  Upon a successful resolution of the case, counsel will seek an award of reasonable attorneys' fees and litigation costs.  Counsel is aware that the Court may have discretion to choose either a lodestar method or percentage-of-the-benefit analysis in approving any request for fees and costs.  *Wershba v. Apple Computer*, 91 Cal.App.4th 224, 254 (2001).  The former analysis will be based on hourly rates for attorneys providing contingency litigation services that are reasonable within the Southern California marketplace.[63]  Plaintiffs have agreed with the counsel they selected that a percentage-of-the-benefit analysis is to be based on a reasonable percentage of the total recovery, but shall not exceed one third of that total recovery.[64]

## V.      THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED

Plaintiffs seek certification of this case under Rule 23(b)(3).   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon v. Chrysler Corp.,* 150 F.3d

---

[58] Emge Decl., ¶7.
[59] Emge Decl., ¶¶3-5; Michael Decl., ¶3.
[60] Emge Decl., ¶4.
[61] Emge Decl., ¶7; Michael Decl., ¶5.
[62] Emge Decl., ¶9; Michael Decl., ¶6.
[63] Emge Decl., ¶10; Michael Decl., ¶7.
[64] Emge Decl., ¶10.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          **08-CV-0033L (WMc)**

1011, 1022 (9th Cir. 1998). Not *every* issue must be subject to generalized proof. Rather, those issues subject to generalized proof must "predominate over those issues that are subject only to individualized proof." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 2011 U.S. Dist. LEXIS 65278 (C.D. Cal. 2011).

The overwhelming weight of the evidence in this case demonstrates that the primary issue of whether class members were misclassified is a common issue. Because every class member performs the same job under identical contracts and identical practices, policies and procedures, proof of the *Borello* factors, including Diakon's *right to control* are subject to common proof, and not individual to each class member. Thus, the primary *factual* question presented here is what common practices, policies and procedures were used? The primary *legal* question is whether those practices, policies and procedures created an employment situation between Diakon and the class under applicable California law. These *common* questions of fact and law predominate over any and all individual issues.

Claims of employee misclassification are particularly appropriate for certification because the relevant practices, policies and procedures are amenable to common proof. *See, Smith v. Cardinal Logistics Management Corp.*, 2008 U.S. Dist. LEXIS 117047 (N.D. Ca. 2008) (class delivery drivers classified as independent contractors, but subject to the uniform contracts, practices and policies of logistics company certified for class treatment to determine if they were employees); *Estrada v. FedEx*, 154 Cal.App.4th at 14; *JKH Enterprises, Inc., v. Department of Industrial Relations*, 142 Cal.App.4th 1046, 1064-65 (2006) (in an enforcement proceeding by the DIR, and following an evidentiary hearing, all of the employer's delivery drivers, who had been classified as independent contractors, were found to be employees); *Ayala v. Antelope Valley Newspapers, Inc.*, 2012 Cal.App. LEXIS 1083 (newspaper delivery drivers classified as independent contractors, but claiming to be employees certified for class treatment).

/ / /

/ / /

/ / /

/ / /

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          **08-CV-0033L (WMc)**

Plaintiffs' claim of unreimbursed business expenses is subject to common proof.  Labor Code Section 2802 provides:

> (a)  An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

California Code of Regulations, Title 8, Section 11090 (9) provides:

> (A) When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer.  The term "uniform" includes wearing apparel and accessories of distinctive design or color.

> (B) When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer….

In the present case, all class members have been and are treated identically in terms of Defendant's refusal to reimburse them for necessary expenditures or losses.  All are required by Defendant to have a "helper."[65]  Although required by Defendant, the cost of helpers must be borne by the class member and generally cost $120 to $130 per day.[66]  Truck fuel is paid directly by class members, but not reimbursed.  Additionally, the following charges are included on each class members' biweekly settlements as deductions from wages earned:   General Liability Insurance; Rental Truck Insurance; Disability Insurance; Promissory Note Payment; Chargebacks (for damage to customer's residence or product); and Uniforms.[67]  Where liability arises from the use of standard forms or contracts, it is often appropriate to treat the case as a class action.  *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998).

Named Plaintiffs contend that each of these deductions is a necessary expenditure incurred by them as a direct consequence of their duties performed for Defendant.  Defendant contends that each is an expense associated with being an independent contractor.   The

---

[65] Johnson Depo, 21:19-25; 22:1-8.
[66] Soto Depo, 37:12-15.
[67] Settlement Statement (Exhibit "L").

20

1   determination of whether reimbursement to the class members is required is uniform and can be

2   determined without individual inquiry on a classwide basis.

3       Moreover, the amount of actual reimbursements due to class members can be determined

4   directly from the weekly settlement deductions.   Defendant provided class members with

5   estimates of fuel charges,[68] and these estimates are sufficient for estimating damages.  *See Marsu,*

6   *B.V. v. Walt Disney Co.,* 185 F.3d 932, 938-39 (9th Cir. 1999); *Dalton v. Lee Publications*, 2010

7   U.S. Dist. LEXIS 75132 (S.D. Cal. 2010).

8       Common issues also predominate with respect to the claim for failure to provide properly

9   itemized wage statements.   Labor Code Section 226 requires the employer to keep accurate,

10   itemized pay statements setting forth gross wages, the actual number of hours and minutes

11   worked and all applicable hourly rates of pay.   Defendant uses the same form for all drivers'

12   biweekly wage statements.[69]  This form, however, fails to include the required information stating

13   the number of hours worked.[70]   No other wage statements demonstrating the required wage

14   information are used.  "Merely filing the "lawsuit, and the difficulty and expense Plaintiffs have

15   encountered in attempting to reconstruct time and pay records is . . . evidence of the injury

16   suffered as a result of [the] wage statements."  *Perez v. Safety-Kleen Systems, Inc.,* 2007 U.S.

17   Dist. LEXIS 483088 (N.D. Cal. June 27, 2007).  Because the same, universal form is used for all

18   drivers, the determination of liability for the Fifth Claim is clearly amenable to classwide

19   analysis.

20       Plaintiff's UCL claim is appropriate for certification.  Any violation of California's wage

21   and hour laws may also be held to violate the UCL.  *Hudgins v. Neiman Marcus Group, Inc.*, 34

22   Cal.App.4[th] 1109, 1126 (1995).  Should Plaintiffs successfully establish that business expenses

23   were not reimbursed, then the class will be entitled to restitution under the UCL.  *Cortez v.*

24   *Purolator Air Filtration,* 23 Cal.4[th] 163, 178 (2000) [unlawfully withheld wages are property of

25   the employee within the contemplation of the UCL].   Additional remedies such as injunctive

26   relief may also be appropriate.  *Arias v. Superior Court*, 46 Cal.4[th] 969, 977 (2009).   No

---

[68] Hoswell Depo., 51:25; 52:1-10.
[69] Exhibit "L."
[70] *Id.*

21

1   individual inquiry will be necessary to determine liability under the UCL.

2   **VI.    CLASS TREATMENT OF THE ACTION IS THE MOST FAIR AND EFFICIENT METHOD OF ADJUDICATING THE CONTROVERSY**

3

4   Rule 23(b), known as the 'predominance inquiry' "focuses on the relationship between

5   the common and individual issues and tests whether the proposed class [is] sufficiently cohesive

6   to warrant adjudication by representation."  *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d

7   935, 944 (9th Cir. 2009).  The purpose of this requirement is to help achieve judicial economy

8   without sacrificing procedural fairness.  *Id.*  Rule 23(b)(3) lists four pertinent considerations for

9   determining if certification provides for a fair and efficient adjudication of the controversy.  All

10  four considerations support certification herein:

11  **A.    Putative Class Members Have Shown No Interest In Individually Controlling the Prosecution Of Separate Actions**

12

13  The present action has been pending for nearly five years.  During this period, only the

14  three Named Plaintiffs, out of 345 owner-operators, have pursued litigation arising out of their

15  misclassification.   Initially filed as two separate actions, the cases were consolidated after

16  determining that a single, consolidated action was more efficient and fair than pursuing two,

17  separate cases.[71]  Notice of counsel's request for contact information was previously sent to all

18  class members.  Even after being notified of the case, no class members have expressed any

19  interest in controlling the prosecution of separate actions.[72]

20  **B.    No Related Litigation Has Been Commenced by Class Members**

21  Plaintiffs' counsel has periodically checked the dockets of all California district courts

22  through PACER, as well as the dockets of the superior courts nearest to Defendant's operations

23  for other, similar filings, but has not discovered any other related lawsuits filed or litigated in the

24  last five years.[73]

25  / / /

26  / / /

27

28
_____

[71] Emge Decl., ¶6.
[72] *Id.* at ¶11.
[73] *Id.*

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**          08-CV-0033L (WMc)

### C.        Concentrating These Claims In the Southern District Is Desirable

Defendant contracted with Jerome's Furniture to provide home-delivery services in San Diego, California and has conducted substantial business in this county throughout the entire class period. Plaintiff SOTO worked for Defendant solely in San Diego, California. All Named Plaintiffs and all class members are California residents and every claim pled herein arises under California law. *See generally,* FAC. All executive decisions and documentation used by Defendant originate out of state, and witnesses are not centralized in any one location within California. Accordingly, the current forum is the most efficient forum to litigate the claims alleged in the FAC.

### D.        There Are No Foreseeable Difficulties In the Management Of the Class Action

Proposed class counsel has litigated similar class actions in both state and federal court for more than a decade.[74] The present action presents no unique management issues. Evidence at trial is anticipated to be introduced through a limited number of witnesses, including Defendant's president, Defendant's regional managers and Named Plaintiffs. Defendant's own records, including its service agreements and settlement statements were used for every class member and contain the majority of data necessary to establish each claim, including the duties of the drivers, the methods of compensation, discipline and Diakon's right to control the drivers. Further, these documents provide all pertinent data on the business expenses incurred by class members, including the biweekly deductions from paychecks made by Diakon. Plaintiffs' retained economist will be positioned to present total damages suffered by class members in a concise manner. In short, this case is well-suited for class treatment.

## VII.     PROPOSAL FOR CLASS NOTICE

Pursuant to Rule 23(c)(2)(B), the certification of this case for class treatment requires the best notice to class members that is practicable under the circumstances. Here, there is little doubt that direct, mailed notice to all class members will be the best notice practicable. The parties have already engaged the services of an independent administrator and privacy notice was previously mailed out to putative class members. The same administrator may be retained to

---

[74] *Id.* at ¶¶ 4-5.

**POINTS AND AUTHORITES RE MOTION FOR CLASS CERTIFICATION**      **08-CV-0033L (WMc)**

1   serve class notice via First-Class Mail.  A proposed notice to the class is attached as Exhibit "P"

2   to the Emge Decl.

3       Plaintiffs propose that class notice be mailed within 20 days of the Court's certification of

4   the case and approval of the form of the notice.  Class members should be provided a period of

5   45 days to request exclusion from the case.  Individuals wishing to remain members of the class

6   should not have to take any steps at all.  All such class members who choose not to exclude

7   themselves from the case will be bound by a subsequent class judgment.

8   **VIII.   <u>CONCLUSION</u>**

9       Based upon the foregoing argument and citation to authority, Plaintiffs respectfully

10  request that this Court certify this action as a class action, appoint Named Plaintiffs, JOSUE

11  SOTO, GHAZI RASHID and MOHAMED ABDELFATTAH as class representatives, and

12  appoint Emge & Associates and The Michael Law Firm as class counsel.

13                                  Respectfully submitted,

14  DATED:  October 26, 2012        EMGE & ASSOCIATES

15

16                                  _/s/_     Derek J. Emge_____
                                    Derek J. Emge
17
                                    Attorneys for Plaintiffs JOSUE SOTO, Individually
18                                  and On Behalf of All Others Similarly Situated, and
                                    on Behalf of the General Public
19

20

21

22

23

24

25

26

27

28

24